# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br><br>**BUILDING MATERIALS HOLDING CORPORATION,** *et al.*,[1]<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Chapter 11**<br><br>**Case No. 09-12074 (KJC)**<br><br>**Jointly Administered** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS, (IV) MODIFYING THE AUTOMATIC STAY AND (V) SCHEDULING A FINAL HEARING

Upon the motion (the "**DIP Motion**"), dated June 16, 2009, of Building Materials Holding Company ("**BMHC**" or the "**Borrower**") and its debtor affiliates, as debtors and debtors in possession (the "**Debtors**") for entry of an order authorizing the Debtors to, among other things:

      (i)      enter into (a) a Debtor in Possession Credit Agreement (the "**DIP Credit Agreement**"), attached hereto as **Exhibit 1** (as such agreement may be amended or modified from time to time),[2] by and among, BMHC, the guarantors party thereto (collectively, the "**Guarantors**"), and the other lenders from time to time party thereto (collectively, the "**Lenders**") and Wells Fargo Bank, National Association ("**WFB**"), as the Agent for the

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are as follows: Building Materials Holding Corporation (4269), BMC West Corporation (0454), SelectBuild Construction, Inc. (1340), SelectBuild Northern California, Inc. (7579), Illinois Framing, Inc. (4451), C Construction, Inc. (8206), TWF Construction, Inc. (3334), H.N.R. Framing Systems, Inc. (4329), SelectBuild Southern California, Inc. (9378), SelectBuild Nevada, Inc. (8912), SelectBuild Arizona, LLC (0036), and SelectBuild Illinois, LLC (0792).

[2] Each capitalized term used in this Order, but not defined herein, shall have the meaning ascribed to it in the DIP Credit Agreement.

Lenders (the "**Agent**"); and (b) all other loan documents (together with the DIP Credit Agreement, the "**DIP Loan Documents**");

        (ii)     borrow, on an interim basis, pursuant to the DIP Loan Documents, postpetition financing in an aggregate principal amount of up to $40,000,000 (the "**Interim Commitment Amount**") and seek other financial accommodations from the Lenders pursuant to the DIP Credit Agreement, the other DIP Loan Documents, and this Order;

        (iii)     borrow, on a final basis, pursuant to the DIP Loan Documents, postpetition financing in an aggregate principal amount of up to $80,000,000 (subject to certain borrowing base and other restrictions as set forth in the DIP Credit Agreement) and seek other financial accommodations from the Lenders pursuant to the DIP Credit Agreement, the other DIP Loan Documents, and this Order;

        (iv)     grant priming liens, security interests, and mortgages in substantially all of the Debtors' assets (subject to certain exceptions more fully set forth in the DIP Loan Documents and this Order) to secure repayment of the borrowings made under the DIP Loan Documents by, and financial accommodations made to, the Debtors;

        (v)     grant superpriority administrative expense status to the claims of the Agent and the Lenders under the DIP Loan Documents;

        (vi)     use the proceeds arising from the DIP Loan Documents in a manner consistent with the terms and conditions of the DIP Loan Documents and this Order;

        (vii)     use "Cash Collateral" (the "**Cash Collateral**") as such term is defined in section 363(a) of title 11 of the United States Code (the "**Bankruptcy Code**");

        (viii)     grant, as set forth more fully below, replacement liens and superpriority claims to the Prepetition Lenders (as defined below) only to the extent of any diminution in value

of such Prepetition Lenders' respective interests in property of the Debtors or their estates, as adequate protection for the use of Cash Collateral;

(ix)    vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Order;

(x)    pay all amounts contemplated to be paid under the DIP Documents (as defined below), including all fees and expenses set forth therein;

(xi)    schedule a hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") which, among other things, approves, on a final basis, the DIP Documents; and

(xii)    waive any applicable stay of the effectiveness of this Order and provide for the immediate effectiveness of this Order.

The Court having considered the DIP Motion, examined the exhibits attached thereto, and having completed an interim hearing (the "**Interim Hearing**") as provided for under section 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and finding the Debtors provided adequate notice to all necessary parties and that no further notice is required:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING INCLUDING THE REPRESENTATIONS MADE ON THE RECORD, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date.** Commencing on June 16, 2009 (the "**Petition Date**"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") with the United States Bankruptcy Court for the District of Delaware (the "**Court**"). The Debtors have continued in the management and operation of their businesses and properties

as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

B. **Jurisdiction and Venue.** This Court has jurisdiction over these proceedings pursuant to sections 157(b) and 1334 of title 28 of the United States Code and over the persons and property affected hereby. This Court's consideration of the DIP Motion constitutes a core proceeding under section 157(b)(2) of title 28 of the United States Code. Venue for these cases and the proceedings regarding the DIP Motion is proper in this district under sections 1408 and 1409 of title 28 of the United States Code.

C. **Committee Formation.** As of the date hereof, the United States Trustee for the District of Delaware (the "**United States Trustee**") has not yet appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**").

D. **The Prepetition Credit Agreement.** BMHC, as borrower, the other Debtors, as guarantors, WFB, as administrative agent (the "**Prepetition Administrative Agent**"), and the lenders party thereto (together with the Prepetition Administrative Agent, the "**Prepetition Credit Agreement Lenders**") are parties to the Second Amended and Restated Credit Agreement, dated as of November 10, 2006 (as amended, the "**Prepetition Credit Agreement**"). The Prepetition Credit Agreement provides for a $340 million term loan facility maturing November 2011 (the "**Prepetition Term Loan**") and a $200 million revolving credit facility maturing November 2011 (the "**Prepetition Revolving Credit Facility**"). In addition, the Debtors caused to be issued various letters of credit (the "**Prepetition Letters of Credit**") in favor of certain of the Debtors' creditors. WFB issued the Prepetition Letters of Credit under the terms of the Prepetition Credit Agreement, by which the outstanding Prepetition Letters of Credit

reduce the $200 million amount available to the Debtors under the Prepetition Revolving Credit Facility.

E. **The Swap Transactions**. The Debtors are party to two ISDA Master Agreements, (a) an ISDA Master agreement with BNP Paribas dated as of April 7, 2004 (along with all schedules, confirmations, and amendments to the same, the "**BNP Paribas Master Agreement**") and (b) an ISDA Master agreement with Suntrust Bank dated as October 10, 2006 (along with all schedules, confirmations, and amendments to the same, the "**Suntrust Bank Master Agreement**" and, together with the BNP Paribas Master Agreement, the "**Prepetition Master Agreements**"). The Prepetition Master Agreements govern multiple Transactions (as defined in the Prepetition Master Agreements) between the parties. For purposes of this Order, the term "**Prepetition Lenders**" shall mean the Prepetition Credit Agreement Lenders, BNP Paribas, and Suntrust Bank, in each case, in their capacities under the Prepetition Master Agreements.

F. **Other Secured Debt**. The Debtors' other long-term secured debt ("**Other Secured Debt**") consists of term notes, equipment notes, and capital leases for equipment that total approximately $1.3 million. The interest rates on these borrowings vary and the dates of maturity extend through March 2021.

G. **Prepetition Indebtedness and Documents.** For purposes of this Order: (i) the term "**Prepetition Lender Debt**" shall mean all indebtedness and other amounts owed under the Prepetition Credit Agreement and the Prepetition Master Agreements and (ii) the term "**Prepetition Documents**" shall mean the Prepetition Credit Agreement, the Prepetition Security Agreement (as defined below), and the Prepetition Master Agreements, and all other agreements, documents, notes, instruments, and any other agreements delivered pursuant thereto or in

connection therewith.

H.      **Prepetition Liens**.  To secure the Prepetition Lender Debt, the Debtors granted the Prepetition Lenders valid liens and senior security interests (the "**Prepetition Liens**") upon and in substantially all of the Debtors' property and assets (the "**Prepetition Collateral**"). The Prepetition Credit Agreement is secured pursuant to that certain Third Amended and Restated Security Agreement by and among the Debtors and the Prepetition Administrative Agent, dated as of November 10, 2006 (the "**Prepetition Security Agreement**"), which grants the Prepetition Credit Agreement Lenders a security interest in substantially all of the Debtors' assets.  Obligations under the Prepetition Master Agreements, moreover, are secured by the Prepetition Collateral, and the resulting security interests are *pari passu* with that created under the Prepetition Security Agreement.

I.      **Debtors' Stipulations**.

Subject to paragraph 6 of this Order, the Debtors acknowledge, represent, stipulate, and agree as follows:

i.      In requesting postpetition financing under the DIP Loan Documents, the Debtors acknowledge, represent, stipulate, and agree that in entering into the DIP Loan Documents, and as consideration therefor, that until such time as all non-contingent obligations under the DIP Credit Agreement (the "**DIP Obligations**") are paid in full and the commitments related thereto are terminated in accordance with the terms of the DIP Loan Documents, the Debtors shall not in any way grant, seek to grant, or cause to be granted any lien and/or claim that is senior to or *pari passu* with any of the liens, security interests, and claims provided under this Order to the Agent or the Lenders, including, without limitation, by offering a subsequent lender or any other party a superior or *pari passu* lien or claim pursuant to

Bankruptcy Code section 364(d), or otherwise, except with respect to the Permitted Priority Liens[3] and the Carve-Out (as defined herein). Nothing herein is intended to limit the Debtors' ability to pay off in full the DIP Obligations through alternative financing.

        ii.    The Debtors acknowledge, represent, stipulate, and agree that as of the Petition Date (A) the aggregate unpaid principal amount of the Prepetition Lender Debt is approximately $310.3 million and the outstanding face amount of all undrawn letters of credit under the Prepetition Credit Agreement of approximately $112.5 million, exclusive of accrued but unpaid interest, fees, costs, and expenses incurred, or anticipated to be incurred, in connection therewith, as provided under the Prepetition Credit Agreement and/or the Prepetition Master Agreements; (B) all of the Prepetition Lender Debt under the Prepetition Credit Agreement is unconditionally due and owing by the Debtors to the Prepetition Credit Agreement Lenders; (C) all claims in respect of the Prepetition Lender Debt are not subject to any avoidance, reductions, disallowance, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any other applicable law or regulation; and (D) the Debtors have waived, discharged, and released any right they may have to challenge any of the Prepetition Lender Debt and the security for those obligations and to assert any offsets, defenses,

---

[3]      For the purposes of this Order, **"Permitted Priority Liens"** shall mean, among others, certain prepetition liens for taxes, fees, assessments or other governmental charges which are not delinquent or remain payable without penalty, or which are being contested in good faith and by appropriate proceedings, if adequate reserves in accordance with GAAP are maintained by BMHC or such subsidiary, which proceedings have the effect of preventing the forfeiture or sale of the property subject thereto; carriers', warehousemen's, mechanics', landlords', materialmen's, repairmen's or other similar liens arising in the ordinary course of business which are not delinquent or which are being contested in good faith and by appropriate proceedings, if adequate reserves in accordance with GAAP are maintained by BMHC or such subsidiary, which proceedings have the effect of preventing the forfeiture or sale of the property subject thereto; liens (other than any lien imposed by ERISA and other than on the Collateral) consisting of pledges or deposits required in the ordinary course of business in connection with workers' compensation, unemployment insurance and other social security legislation; and easements, rights of way, restrictions and other similar encumbrances incurred in the ordinary course of business which, in the aggregate, are not substantial in amount, and which do not in any case materially detract from the value of the property subject thereto or interfere with the ordinary conduct of the businesses of BMC and its subsidiaries.

claims, objections, challenges, causes of action, and/or choses of action against the Prepetition Administrative Agent and the Prepetition Lenders and any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors, and employees; provided, however, that the Debtors' waiver, discharge, and release under this paragraph shall only relate to claims and security arising under or related to the Prepetition Documents.

iii.     The Debtors acknowledge, represent, stipulate, and agree that as of the Petition Date and immediately prior to giving effect of this Order, the Prepetition Documents are valid and binding agreements and obligations of the Debtors and the Prepetition Liens (A) constitute valid, binding, enforceable, and first-priority properly perfected security interests and liens on the Prepetition Collateral; and (B) are not be subject to avoidance, reductions, disallowance, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any other applicable law or regulation by any person or entity.

J.     **Notice.**  The Interim Hearing was held in accordance with Bankruptcy Rule 4001 and Local Rule 4001-2.  Notice of the Interim Hearing and the relief requested in the DIP Motion was provided by the Debtors on June 16, 2009, whether by telecopy, email, overnight courier, or hand delivery, to parties-in-interest, including:  (i) the Office of the United States Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) WFB, as Agent and Prepetition Administrative Agent; (v) BNP Paribas; (vi) Suntrust Bank; (vii) the parties listed on the Debtors' list of thirty (30) largest unsecured creditors; and (viii) counsel to the Agent and Prepetition Administrative Agent.  Such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1) and 364 of the Bankruptcy Code; Bankruptcy Rules 2002, 4001(c), 4001(d); and

the Local Rules.

K. **Need for Postpetition Financing.** Entry of this Order is necessary to prevent substantial harm to the Debtors' estates that would otherwise result if the Debtors fail to obtain the financing contemplated herein to preserve the Debtors' assets and continue their operations. The Debtors' businesses have an immediate need to obtain the postpetition financing under the DIP Loan Documents in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial, and general corporate needs. The Debtors will suffer substantial harm unless this Court immediately authorizes the Debtors to obtain loans and other financial accommodations from the Lenders in accordance with the terms of this Order, the DIP Loan Documents, and any other documents, instruments, or agreements related thereto or delivered or executed in connection therewith (the DIP Loan Documents, together with such documents, instruments, and agreements, the "**DIP Documents**").

L. **No Comparable Credit Available on More Favorable Terms.** The Debtors have made reasonable efforts, under the circumstances, to locate financing of the type contemplated by this Order, and the Court expressly finds that the Debtors are unable to obtain, in the ordinary course of business or otherwise, financing of the type contemplated herein on an unsecured basis. Specifically, the Debtors have been unable to obtain unsecured credit allowable under sections 364(a), 364(b), 364(c)(1), and 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit, allowable under Bankruptcy Code sections 364(c) and 364(d), on more favorable terms and conditions than those provided in the DIP Documents and this Order.

M. **Lenders' Requirements.** The Lenders are willing to lend money and provide other financial accommodations to the Debtors only on the terms and conditions and with the protections provided herein and in the DIP Documents and are relying on such terms, conditions, and protections in agreeing to lend money and provide financial accommodations to the Debtors hereunder.

N. **Use of Cash Collateral.** The Debtors also require the use of Cash Collateral to operate their business. Without the use of Cash Collateral, the Debtors will not be able to meet their cash requirements for working capital needs. The Agent and the Lenders consent to the use of their Cash Collateral under the Prepetition Credit Agreement on the terms and conditions, and for the purposes, specified herein and in the DIP Loan Documents. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such parties and to adequately protect non-consenting parties' interests in the Prepetition Collateral.

O. **Good Cause.** The ability of the Debtors to obtain sufficient working capital and liquidity and use of Cash Collateral under this Order and the DIP Loan Documents is vital to the Debtors' estate and creditors. The liquidity to be provided pursuant to the receipt of the Interim Commitment Amount and through the use of Cash Collateral will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' businesses. The Debtors' estate will be immediately and irreparably harmed if this Order is not entered. Good Cause has, therefore, been shown for the relief sought in the DIP Motion, as modified herein.

P. **Good Faith.** The terms and conditions of the use of Cash Collateral and

the DIP Documents have been negotiated in good faith and at arms' length by all parties involved and reflect the Debtors' exercise of prudent business judgment, and the Agent and the Lenders and the Debtors have offered sufficient proof thereof. Accordingly, the Court expressly finds that the terms of this Order and the DIP Documents have been extended in good faith and that any credit extended, loans to be made, or other financial accommodations granted to the Debtors pursuant to this Order and the DIP Documents shall, in each case, be deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

Q. **506(c) and 552(b) Waivers.** In light of the Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out and the Permitted Priority Liens, as applicable, upon entry of a Final DIP Order providing for such relief, the Lenders and the Prepetition Lenders are entitled to a waiver of (i) the provisions of section 506(c) of the Bankruptcy Code and (ii) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, in each case, in respect of the DIP Documents.

R. **Immediate Entry of the Order.** The Debtors have requested that this Order become immediately effective and enforceable upon entry pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The DIP Motion and this Order comply with Local Rule 4001-2. The Debtors have demonstrated good cause for the entry of this Order and for this Order to become immediately effective and enforceable upon entry. Among other things, entry of this Order and the immediate effectiveness and enforceability of this Order upon entry will minimize the disruption of the Debtors' business operations and permit the Debtors to satisfy their operating expenses, will increase the potential for confirmation of a successful chapter 11 plan for the Debtors, and are in the best interests of the Debtors, their creditors, and the Debtors' estates. The terms of the borrowings and other financial accommodations authorized hereby are fair and

reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

        S.    **Entitlement to Adequate Protection.**  As a result of the grant of the DIP Liens, subordination to the DIP Liens, the Permitted Priority Liens, and the Carve-Out, the use of the Prepetition Collateral authorized herein, and the imposition of the automatic stay under section 362 of the Bankruptcy Code, the Prepetition Lenders are entitled to adequate protection only to the extent of the diminution of the value of the Prepetition Collateral, pursuant to sections 361, 362, and 363 as set forth herein. The Debtors have agreed, in the exercise of their sound business judgment, to provide adequate protection to the Prepetition Lenders on the terms and conditions set forth in this Order, which terms and conditions are fair and reasonable and were negotiated in good faith and at arms' length.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

        1.    **Motion Granted.**  The DIP Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Order and the DIP Documents. Any objections and reservations of rights included therein, to the extent not withdrawn with prejudice, settled, or resolved are hereby overruled on the merits. This Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

        2.    **Authorization.**

        (a)    Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents and provided that the Debtors are not in default under the terms of this Order, the Debtors shall be and hereby are authorized to borrow money and seek other financial accommodations on an interim basis, in the aggregate principal amount of up to the Interim

Commitment Amount, from the Lenders on the terms and conditions contained in this Order and the DIP Documents. To effectuate and evidence the terms and conditions of the borrowings and extensions of credit and other financial accommodations to be made to the Debtors by the Lenders pursuant to the terms of this Order, the Debtors are hereby authorized and directed to (i) enter into the DIP Credit Agreement substantially in the form appended as **Exhibit 1** hereto and any other DIP Documents that may be entered into in connection with the DIP Credit Agreement, and (ii) repay a limited portion, $4.0 million, of the amount owing under the Prepetition Revolving Credit Facility (as described in greater detail below).

(b)     Subject to the terms of this Order and the DIP Documents, the Debtors are authorized and directed to use Cash Collateral in which the Prepetition Administrative Agent and/or the Prepetition Lenders may have an interest, in accordance with the terms, conditions, and limitations set forth in this Order and/or the DIP Loan Documents, without further approval by this Court. Any dispute in connection with the use of Cash Collateral in accordance with the DIP Loan Documents and this Order shall be heard by this Court.

3.     **Enforceable Obligations.**  Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents, such agreements and documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successors thereto and their creditors in accordance with their terms.

4.     **Superpriority Administrative Claim Status.**  The Agent, for the benefit of itself and the Lenders, is hereby granted an allowed superpriority expense claim (the "**Superpriority Claim**") against the Borrower and each Guarantor pursuant to section 364(c)(1) of the Bankruptcy Code, with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503(b), 506(c)

(upon entry of a Final DIP Order providing for such relief), 507(a), 507(b), 546, 726 (to the extent permitted by applicable law), 1113, and 1114 of the Bankruptcy Code, subject and subordinate only to the Carve-Out, and at all times, senior to the rights of the Debtors or any successor trustee, examiner, or responsible person, and not subject to subordination, impairment, or avoidance, in the Chapter 11 cases and in any successor case or proceeding under the Bankruptcy Code or otherwise.

5. **Post-Petition Liens.** Upon entry of this Order, the Agent and the Lenders shall be and hereby is granted, as of the date hereof, valid, perfected, enforceable, and non-avoidable first priority priming liens on and senior security interests (the "**DIP Liens**") in all of the property, assets, or interests in property or assets of BMHC and each Guarantor, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created (including all property of the estate (within the meaning of the Bankruptcy Code), all accounts, deposit accounts, money, letter of credit rights, commercial tort claims, inventory, contract rights, instruments, documents, chattel paper, general intangibles, machinery and equipment, real property, leases, capital stock or other equity interests in any subsidiary, intercompany claims, and investment property, and all other causes of action arising under the Bankruptcy Code or otherwise, and all proceeds, rents, products, and profits of any of the foregoing) (the "**Collateral**"), which DIP Liens shall not be subject to subordination, impairment, or avoidance, for all purposes in the Chapter 11 Cases and any successor case or proceeding under the Bankruptcy Code or otherwise; provided, however, that "Collateral" shall not include: (i) any agreements, contracts, permits, or licenses only if and to the extent that the granting of a lien as contemplated hereby would (A) constitute a violation of a restriction in favor of a third party on such grant, (B) give any other party to such contract, instrument, license, license agreement, or

other document the right to terminate its obligations thereunder, or (C) violate any law (other than (but only in respect of agreements or contracts not constituting a document evidencing a Capital Lease or purchase money obligation) to the extent that any such term described in the preceding clauses (A), (B) or (C) would be rendered ineffective pursuant to Section 9-406, 9-407 or 9-408 of the UCC (or any successor provision or provisions)) (**"Excluded Contracts and Leases"**); provided, further, that any agreement, contract, permit or license that does not constitute "Collateral" pursuant to this sentence shall immediately become "Collateral," and the Loan Parties, as applicable, shall be deemed to have granted a lien therein, from and after such time as the other party to such agreement, contract, permit or license consents to the grant of a Lien in such agreement, contract, permit or license in favor of the Collateral Agent or the prohibition against granting a lien therein otherwise ceases to be effective; and provided, further, that with respect to Excluded Contracts and Leases, Collateral shall include the proceeds from the disposition of Excluded Contracts and Leases whether now or hereafter arising, whether tangible or intangible, and wherever located; (ii) any equipment subject to certain long-term secured debt consisting of the term notes, equipment notes and capital leases set forth on Part I of Schedule 1.01A of the DIP Credit Agreement and any other equipment in which any Loan Party has rights if and for so long as the grant of a security interest therein shall constitute or result in a breach or termination pursuant to the terms of, or a default under, any capital lease or purchase money agreement entered into in connection with the acquisition or financing of such equipment; provided, however, that such security interest shall attach immediately at such time as the term restricting the attachment of a security interest in such equipment is no longer operative or the attachment of a security interest in such equipment would not constitute or result in a breach or termination pursuant to the terms of, or a default under, the capital lease or purchase money

agreement governing such equipment; (iii) any trademark applications filed in the United States Patent and Trademark Office on the basis of a Loan Party's "intent-to-use" such trademark to the extent that granting a security interest in such trademark application prior to such filing would adversely affect the enforceability or validity or result in the voiding of such trademark application, unless and until acceptable evidence of use of the Trademark has been filed with and accepted by the United States Patent and Trademark Office pursuant to Section 1(c) or Section 1(d) of the Lanham Act (15 U.S.C. 1051, et seq.), whereupon such Trademark application will be deemed automatically included in the Collateral; (iv) any Avoidance Actions; (v) the insurance-related cash collateral accounts set forth on Schedule 1.01B of the DIP Credit *and any other paid loss deposit ~~funds~~ held by the American Insurance* Agreement, the aggregate balances of which shall not exceed $4,000,000 at any point in time *Company* without the prior written consent of the Administrative Agent; or (vi) the real property set forth *and its* on Part II of Schedule 1.01A of the DIP Credit Agreement:[4] *affiliates*

      (a)      <u>Senior Lien Priority</u>. The DIP Liens shall not at any time be (i) made subject or subordinate to, or made *pari passu* with any other lien, security interest, or claim existing as of the Petition Date, or created under Bankruptcy Code sections 363 or 364(d) or otherwise other than the Permitted Priority Liens and the Carve-Out or (ii) made subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estate under Bankruptcy Code section 551.

      (b)      <u>Perfection of Postpetition Liens</u>. The Agent and the Lenders shall not be required to file or record financing statements, mortgages, notices of liens, or other documents in any jurisdiction or take any other action in order to validate, perfect, or establish the priority of the DIP Liens granted to them by this Order or the DIP Loan Documents. The

---

[4]    For the avoidance of doubt, the Collateral shall not include equipment and other assets pledged as collateral with respect to the Other Secured Debt.

DIP Liens granted in this Order and in the DIP Loan Documents to secure repayment of any of the DIP Obligations are deemed perfected hereby and no further notice, filing, or other act shall be required to effect such perfection. If the Agent and the Lenders shall, in their sole discretion, choose to file (in accordance with the terms and conditions set forth in the DIP Loan Documents) financing statements, mortgages, or other documents or otherwise confirm perfection of such security interests, liens, and mortgages, the Agent and the Lenders are authorized (to the extent not prohibited by the DIP Loan Documents) to effect such filings and recordings and all such financing statements, mortgages, or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. The automatic stay imposed by section 362(a) of the Bankruptcy Code shall not limit the right of the Agent or the Lenders to take such steps as it determines in its discretion are necessary or desirable to perfect any of the DIP Liens, even absent an event of default under the DIP Facility. A photocopy of this Order may, in the discretion of the Lenders and the Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien, or similar instruments, and all filing offices are directed hereby to accept such copy of this Order for filing and recording.

(c)     Term. The DIP Liens, Superpriority Claim, and other rights and remedies granted under this Order to the Agent and the Lenders shall continue in the Chapter 11 Cases and any successor case or proceeding under the Bankruptcy Code or otherwise, and such liens and security interests shall maintain their first priority as provided in this Order until all the DIP Obligations have been paid in full and the Lenders' commitments have been terminated in accordance with the DIP Loan Documents.

## 6. **Challenge Period.**

(a)    Challenge Period Deadline.  Any non-Debtor party-in-interest with standing (including any Creditors' Committee) shall have until ninety (90) days from the Petition Date or such later date (i) consented to by the Prepetition Administrative Agent or (ii) ordered by this Court (the "**Challenge Period Deadline**") to file/initiate an adversary complaint or a contested matter with this Court (i) challenging the amount, validity, enforceability, extent, or priority of the Prepetition Lender Debt or the Prepetition Liens or (ii) otherwise asserting any other claims or causes of action against the Prepetition Lenders (and their successors and assigns, if applicable) (a "**Challenge**") arising out of the Prepetition Master Agreements or the Prepetition Credit Agreement, and/or the prepetition activities of the Prepetition Administrative Agent or any of the Prepetition Lenders (and/or its and/or their successors and assigns, if applicable).  Any Challenge may be filed in the name of the Debtors without leave of the Court, upon three (3) days prior written notice to the Debtors and the Prepetition Administrative Agent.

(b)    Failure to File or Successfully Prosecute a Challenge.  To the extent that (i) a Challenge is not filed by the Challenge Period Deadline (or such other later date as may be extended by the written consent of the Prepetition Administrative Agent, acting on the instruction of the Majority Lenders, with respect to the Prepetition Credit Agreement, or BNP Paribas or Sun Trust, with respect to their respective Prepetition Master Agreements) by any statutory committee or such other non-Debtor party or (ii) if a Challenge is so filed and the Prepetition Administrative Agent or any of the Prepetition Lenders (and/or its and/or their successors and assigns, if applicable) ultimately prevails in its defense thereof pursuant to a non-appealable order:  (A) the Prepetition Lender Debt shall constitute allowed claims for all purposes in the Debtors' bankruptcy proceedings and shall not be subject to avoidance, reduction,

recovery, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any other applicable federal, state, or local law or regulation by any person or entity (including, without limitation, any receiver, administrator, trustee, successor trustee, examiner, or responsible person in the Chapter 11 Cases and any successor case or proceeding under the Bankruptcy Code or otherwise); (B) the Prepetition Liens shall be deemed legal, valid, binding, enforceable, perfected, and otherwise unavoidable first priority liens and security interests, as of the Petition Date, and, except as set forth in this Order, shall not be subject to any claim (as such term is defined in the Bankruptcy Code), counterclaim, cross-claim, defense, avoidance, reduction, recovery, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), or any other challenge under the Bankruptcy Code or any other applicable federal, state, or local law or regulation, by any person or entity (including, without limitation, any receiver, administrator, trustee, successor trustee, examiner, or responsible person in the Chapter 11 Cases and any successor case or proceeding under the Bankruptcy Code or otherwise); (C) each Debtor shall be deemed to have irrevocably waived and released any and all "claims" (as such term is defined in the Bankruptcy Code), counterclaim, cross-claims, causes of action, defenses, offsets, and set off rights against the Prepetition Administrative Agent and each of the Prepetition Lenders, in their respective capacities as Prepetition Administrative Agent and/or Prepetition Lender, and not in any other capacity or in respect of any other relationship it or they may have, or have had, with the Debtors, whether arising at law or in equity, including, without limitation, those asserting avoidance, reduction, recovery, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), or any other

challenge arising under or pursuant to the Bankruptcy Code or any other applicable federal, state, or local law or regulation.

(c)    To the extent a Challenge is timely filed on or before the Challenge Period Deadline (or any amendment to such Challenge, as may be allowed thereafter), all claims and actions respecting the Prepetition Lender Debt or the Prepetition Liens or against the Prepetition Lenders shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released, and waived as to (i) each such party filing such Challenge, except with respect to claims and actions that are expressly asserted in the Challenge (or any amendment to such Challenge as may be allowed thereafter) and (ii) all other parties that failed to file such Challenge.

7.    **Adequate Protection Parties**.  The Debtors acknowledge and stipulate that the Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, to adequate protection of their interests in their Prepetition Collateral, including the Cash Collateral, only for and equal in amount to the aggregate diminution in the value of the Prepetition Lenders' interest in the Prepetition Collateral.  Pursuant to the terms and conditions of this Order and the DIP Loan Documents, upon the execution and delivery of the DIP Credit Agreement and the other DIP Loan Documents, and provided that no Debtor is in default of the terms and conditions of this Order and the DIP Loan Documents, each Debtor is authorized to use all Cash Collateral for the operation of their respective businesses in accordance with the DIP Loan Documents.  As adequate protection, the applicable Prepetition Lenders are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)     <u>Adequate Protection Liens</u>.  Pursuant to Bankruptcy Code section 361, 363(e), and 364(d), as adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral against any diminution in value of such interests in the Prepetition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the DIP Liens, (iii) the Debtors' use of Cash Collateral and other Prepetition Collateral, and (iv) the imposition of the automatic stay, the Debtors hereby grant to the Prepetition Lenders, continuing valid, binding, enforceable, and perfected postpetition security interests in and liens on the Collateral (the "**<u>Replacement Liens</u>**") and not subject to subordination, impairment, or avoidance in the Chapter 11 Cases and any successor case or proceeding under the Bankruptcy Code or otherwise.  The Replacement Liens shall be junior in priority only to:  (i) Permitted Priority Liens; (ii) the DIP Liens; (iii) the Carve-Out; and (iv) the Prepetition Liens on the Prepetition Collateral.  The Replacement Liens shall be senior to all other security interests in, liens on, or claims against any of the Prepetition Collateral.

(b)     <u>Adequate Protection Claim</u>.  As further adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral against any diminution in value of such interests in the Prepetition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the DIP Liens, (iii) the Debtors' use of Cash Collateral and other Prepetition Collateral, and (iv) the imposition of the automatic stay, the Prepetition Lenders are hereby granted as and to the extent provided by Bankruptcy Code section 507(b) an allowed superpriority administrative expense claim in the Chapter 11 Cases (the "**<u>Adequate Protection Priority Claims</u>**") not subject to subordination, impairment, or avoidance in the Chapter 11 Cases and any successor case or proceeding under the Bankruptcy Code or otherwise.  Except as set forth herein, the Adequate Protection Priority

Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (upon entry of a Final Order, providing for such relief), 507(a), 507(b) 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114; provided, however, that the Adequate Protection Priority Claims shall be junior in priority to the Superpriority Claim and the Carve-Out.

(c)     As further adequate protection for the use of the Prepetition Collateral (including Cash Collateral) by the Debtors, and in accordance with Bankruptcy Code sections 361, 363(e), and 364(d), the Prepetition Lenders shall receive, as applicable, from the Debtors:

(i)     **Fees and Expenses**.  The Debtors are authorized and directed to pay the reasonable fees and expenses incurred by counsel, financial advisors and other professionals and consultants (to the extent that such other professionals and consultants are provided for under the Prepetition Credit Agreement) retained by the Prepetition Administrative Agent in connection with the Chapter 11 Case (the "**Prepetition Administrative Agent's Professional Costs**"), subject to the same invoice and objection procedures set forth in paragraph 15(j) below for the payment of the professional fees of the Agent and the Lenders; provided, however, that (subject to entry of a Final Order) upon the Debtors' payment of the Prepetition Lender Debt in full, the Debtors shall no longer be obligated under this paragraph 7(c)(i) to reimburse the Prepetition Administrative Agent for the Prepetition Administrative Agent Professional Costs.

(ii)     **Accrual of Interest and Other Amounts**.  To the extent allowable under section 506(b) of the Bankruptcy Code, the Debtors shall accrue interest on the

Prepetition Lender Debt at the default contractual rate until such time as the Prepetition Lender Debt is paid in full.

(iii) <u>Continuation of Liens</u>. The Prepetition Lender shall retain continuing liens on all of the Prepetition Collateral until repayment in full of the Prepetition Lender Debt.

(d) <u>Consent to Priming and Adequate Protection</u>. The Agent and Lenders, acting as the Prepetition Administrative Agent and Prepetition Lenders under the Prepetition Credit Agreement, consent to the adequate protection and the priming provided for herein; <u>provided</u>, <u>however</u>, that the consent of the Agent and the Lenders to the priming, the use of Cash Collateral, and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Order, and such consent shall not be deemed to extend to any other replacement financing or debtor in possession financing other than such provided under the DIP Loan Documents; and <u>provided</u>, <u>further</u>, that such consent shall be of no force and effect in the event this Order is not entered and the DIP Loan Documents are not approved.

8. **Carve-Out**. The Lenders agree that the DIP Liens, the Adequate Protection Liens, and the Superpriority Claim shall be subject to: (i) any unpaid fees due to the United States Trustee pursuant to 28 U.S.C. Section 1930 of the United States Code or otherwise and any fees due to the clerk of the Bankruptcy Court, (ii) the reasonable fees and expenses approved by the Bankruptcy Court incurred by a trustee under section 726(b) or 1104 of the Bankruptcy Code in an aggregate amount not to exceed $100,000, (iii) the reasonable expenses of members of any statutory committee appointed in the Bankruptcy Cases (excluding fees and expenses of professional persons employed by such committee members individually) in an amount not to exceed $50,000, (iv) to the extent allowed at any time, all unpaid fees and

expenses allowed by the Bankruptcy Court of professionals or professional firms retained pursuant to section 327, 330, 363, or 1103 of the Bankruptcy Code (the "**Professional Persons**") that were incurred or accrued through the date upon which BMHC receives from the Agent a notice of an Event of Default, and (v) after the date upon which BMHC receives from the Agent notice of an Event of Default, to the extent allowed at any time, the payment of the fees and expenses of Professional Persons in an aggregate amount not to exceed $500,000; provided, however, that: (1) the dollar limitations in clause (v) above on fees and expenses shall not be reduced by the amount of any compensation or reimbursement of expenses incurred by or paid to any Professional Person prior to the notifications of BMHC by the Agent of the occurrence of an Event of Default in respect of which the Carve-Out is invoked or by any fees, expenses, indemnities, or other amounts paid to any Agent, the Lenders, or their respective attorneys or agents under the DIP Credit Agreement or otherwise, and (2) to the extent the dollar limitation in clause (v) on fees and expenses is reduced by an amount as a result of payment of such fees and expenses during the continuation of an Event of Default, and such Event of Default is subsequently cured or waived, such dollar limitation shall be increased by an amount equal to the amount by which it has been so reduced (the amount of all such permitted uses being defined herein as the "**Carve-Out**").

9. **Authorization to Use Proceeds of DIP Loan Documents and Cash Collateral.** To the extent that the Lenders make advances or extend credit on an interim basis, under this Order and the DIP Credit Agreement, the Debtors shall use such loans, and shall otherwise use their Cash Collateral and other assets, solely in a manner that is consistent with the terms of this Order and the DIP Loan Documents, including, without limitation, to repay $4,000,000 owed under the Prepetition Revolving Credit Facility.

10. **Limitations on the Use of Proceeds.** No proceeds of loans or other financial accommodations made by the Lenders hereunder, and no Cash Collateral, may be used to compensate services rendered or expenses incurred in connection with, directly or indirectly, (i) the filing and prosecution of a Challenge; provided, however, up to $50,000 in the aggregate of Cash Collateral and advances under the DIP Facility may be used by any statutory committee respecting an investigation of the validity, enforceability, extent, or priority of the Prepetition Lender Debt or the Prepetition Liens; (ii) the modification, stay, or amendment of this Order without the consent of the Agent; or (iii) a violation, breach, or default of this Order or any of the DIP Documents, including, without limitation, any claim or action the purpose of which is to seek or the result of which would be to obtain any relief (a) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability, in whole or in part, any of the DIP Obligations or the DIP Liens in the Collateral or (b) preventing, hindering, or otherwise delaying, whether directly or indirectly, the Lenders' or the Agent's assertion, enforcement, or realization upon any Collateral as permitted by this Order or such documents.

11. **Sale of the Collateral and Resulting Proceeds.** Any proceeds of the sale, lease, or other disposition of the Collateral shall be applied in the manner consistent with this Order and the terms of the DIP Loan Documents, and the Debtors hereby irrevocably waive any right to direct the manner or application of any payments to the Lenders or any other receipts by the Lenders of proceeds of the Collateral contrary to the provisions of the DIP Loan Documents. Without the consent of the Agent (acting upon the instruction of the Majority Lenders), the Debtors may not sell any Collateral unless the proceeds of the sale of the Collateral are applied in accordance with the terms of the DIP Credit Agreement.

12. **Enforcement of Remedies.** At any time after the occurrence and during the continuance of any Event of Default, without further order of, application to, or action by this Court, the Agent may or shall, upon instructions from the Majority Lenders as defined in the DIP Credit Agreement, by written notice to BMHC (i) terminate all commitments under the DIP Credit Agreement and Debtors' authorization to use Cash Collateral, (ii) require that BMHC cash collateralize the L/C Obligations in an amount equal to the then effective amount of the L/C Obligations; (iii) declare all or a portion of the outstanding DIP Obligations owed to the Lenders and payable by BMHC to be immediately due and payable without presentment, demand, protest, or any other notice of any kind, all of which are hereby expressly waived; and/or (iv) subject to the giving of three business days notice to Borrower, the United States Trustee and any statutory committee, the automatic stay under section 362 of the Bankruptcy Code shall be deemed automatically vacated and the Agent and the Lenders shall be entitled to exercise all of their respective rights and remedies under the DIP Loan Documents.

13. **Reliance by Lender.** The Debtors shall not seek to modify, vacate, or amend this Order without the written consent of the Agent (acting at the direction of the Majority Lenders). If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacation shall not affect the validity of any debt to the Lenders incurred pursuant to this Order or the DIP Documents prior to the later of (i) the effective date of such stay, modification, or vacation and (ii) receipt of written notice thereof by counsel to the Agent at the addresses set forth in section 11.2 of the DIP Credit Agreement (the "**Effective Time**"), or otherwise affect the validity and enforceability of any DIP Lien or priority authorized hereby. Notwithstanding any such stay, modification, or vacation, any advances of funds made pursuant to this Order by the Lenders to

or for the benefit of the Debtors prior to the Effective Time shall be governed in all respects by the original provisions of this Order.

14. **Good Faith**. The Court has considered and determined the matters addressed in this Order pursuant to its power under section 364(c) of the Bankruptcy Code. Subject to entry of a Final Order, each of the terms and conditions of the DIP Documents, as part of an authorization under such section, is subject to the protections contained in section 364(e) of the Bankruptcy Code.

15. **Miscellaneous.**

(a) Section 364 Waiver. In consideration of the financing and other accommodations made available pursuant hereto, the Debtors irrevocably waive any right to: (i) grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens, security interests, or mortgages on any property, equal or superior to the priority of the DIP Liens, except as provided under the Permitted Priority Liens, the Carve-Out, and the DIP Loan Documents (including the Adequate Protection Obligations); and (ii) seek authority to use Cash Collateral as defined in section 363 of the Bankruptcy Code other than as permitted by this Order, the DIP Credit Agreement, and the other DIP Loan Documents. Such waiver shall be binding upon any successor trustee, examiner, or responsible person in the Chapter 11 Cases or any successor case or proceeding under the Bankruptcy Code or otherwise. Nothing herein is intended to limit the Debtors' ability to pay off in full the DIP Obligations through alternative financing.

(b) Modification of the Automatic Stay. Subject solely to any requirement of the giving of notice by the terms of this Order or the Final Order, the automatic stay provided in section 362 of the Bankruptcy Code shall be deemed automatically vacated without further

action or order of the Court, and the Administrative Agent and the Lenders, upon three (3) Business Days' written notice to BMHC, the United States Trustee, and the any statutory committee appointed in the Chapter 11 Cases, shall be entitled to exercise all of their respective rights and remedies under the DIP Loan Documents, including all rights and remedies with respect to the Collateral and the Guarantors. The Debtors and/or the Creditors' Committee shall have the initial burden of proof at any hearing on any request by the Debtors and/or the Creditors' Committee to re-impose or continue the automatic stay as provided herein. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

(c)     <u>Prohibitions In the Event of Dismissal of Any of the Cases</u>. Except to the extent provided in the DIP Loan Documents, the Debtors shall not seek dismissal of any of the Chapter 11 Cases unless and until all of the DIP Obligations shall have been finally paid in full. If an order dismissing any of the Chapter 11 Cases of the Debtors under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the priority claims and DIP Liens granted to the Agent pursuant to this Order and the DIP Loan Documents in the Collateral of such Debtor shall continue in full force and effect and shall maintain their priorities as provided in this Order until the DIP Obligations shall have been finally paid in full; (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of interpreting this Order; and (iii) such order shall not modify the rights granted to the Agent and Lenders pursuant to this paragraph.

(d)     <u>Section 552(b) Waiver</u>. Upon entry of Final DIP Order providing for such relief, the Agent, the Lenders, the Prepetition Administrative Agent, and the Prepetition

Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Agent and the Lenders with respect to proceeds, product, offspring, or profits of any of the Collateral.

(e)     Section 506(c) Waiver.  Upon entry of Final Order providing for such relief, no costs or expenses of administration shall be imposed against the Agent, the Lenders, the Prepetition Administrative Agent, the Prepetition Lenders, the DIP Obligations, the Prepetition Indebtedness, the Collateral, or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and no action or inaction on the part of the Agent, the Lenders, the Prepetition Administrative Agent, or the Prepetition Lenders shall be deemed to constitute a consent to such surcharge.

(f)     No Marshaling.  The Agent, the Lenders, the Prepetition Administrative Agent, and the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

(g)     No Waiver.  The failure of the Lenders and the Prepetition Lenders to seek relief or otherwise exercise their rights and remedies under the DIP Documents, the DIP Facility, the Prepetition Documents or this Order, as applicable, shall not constitute a waiver of any of the Lenders' or the Prepetition Lenders' rights hereunder, thereunder or otherwise.

(h)     Amendment.  The Debtors and the Agent may amend or waive any provision of the DIP Documents without the need for further approval from this Court provided that:  (i) the DIP Documents, as so modified, are not materially different from the DIP Documents approved in this Order; (ii) notice of all amendments to the DIP Documents are filed

with the Court; and (iii) notice of all amendments to the DIP Documents is provided to all parties requesting notice in these cases, and the United States Trustee.

(i)     Amendment of Organic Documents.  Each Debtor shall, and shall cause each applicable entity that it controls to, implement any necessary amendment to its certificate of incorporation, bylaws, or comparable governing documents such that the relief requested herein shall not have any adverse consequences under any provisions in such governing documents or any shareholder rights plan or similar arrangements.

(j)     Reimbursement of Costs and Expenses.  All fees, costs, and/or expenses payable or reimbursable by the Debtors as set forth in the DIP Loan Documents (other than those in connection with or related to the closing of the DIP Facility, which shall be paid upon entry of the Order) may be paid subject to the following procedures.  The Agent and Lenders shall be promptly reimbursed by the Debtors, without further motion to, hearing by, or order of this Court and without conforming with applicable guidelines of the United States Trustee, for all reasonable out-of-pocket costs and expenses (including, without limitation, all filing and recording fees, attorneys' and paralegals' fees and expenses, and out-of-pocket expenses) (the "**Expense Reimbursement**"), in each case, only as provided for in the DIP Documents; provided, however, that the Agent and the Lenders, as applicable, shall serve, by facsimile or electronic mail, each Expense Reimbursement on the United States Trustee, counsel to the Debtors, and counsel to the Creditors' Committee (the "**Expense Reimbursement Notice Parties**").  If, after ten (10) Business Days after receipt by the Expense Reimbursement Notice Parties of notice of any Expense Reimbursement, the Expense Reimbursement Notice Parties do not deliver to the Agent or a Lenders, as applicable, an objection to the reasonableness of such Expense Reimbursement, then the Debtors shall promptly pay the Agent or the Lender, as

applicable, such Expense Reimbursement. If an Expense Reimbursement Notice Party objects to any portion of an Expense Reimbursement, then the Expense Reimbursement Notice Party shall, within ten (10) Business Days after receipt of notice of the objectionable Expense Reimbursement, deliver to the Agent or a Lender a written objection outlining the amounts to which the Expense Reimbursement Notice Party objects and the reasons therefore. In such case, the Debtors shall promptly pay the Agent or the Lender, as applicable, the undisputed amount of the Expense Reimbursement and the disputed amount shall not be paid absent agreement of the objecting Expense Reimbursement Notice Party or further order of this Court.

(k)  Prepetition Expense Reimbursement. The Debtors shall borrow or obtain cash advances under the DIP Loan Documents to repay a limited portion, $4.0 million, of the amount owing under the Prepetition Revolving Credit Facility (the "**Prepetition Expense Repayment**").

(l)  Releases. Subject to paragraph 6, *supra*, BMHC and the Guarantors shall release (for themselves and their respective bankruptcy estates) (i) the Lenders and the Agent from any and all claims, liens, priority, actions, or inactions arising hereunder or in any other manner, and (ii) the Prepetition Credit Agreement Lenders and the Prepetition Administrative Agent under the Prepetition Credit Agreement from any and all claims, liens, priority, actions, or inactions arising under the Prepetition Credit Agreement or in any other manner (the releases set forth in this clause (ii) being subject only to the right of the any statutory committee appointed in the Chapter 11 Cases or any party in interest, to the extent provided herein, to investigate and bring claims within 90 days of the filing of the Chapter 11 Cases), with such releases being satisfactory to such Lenders and Prepetition Credit Agreement Lenders, as applicable, in their discretion.

(m)     <u>Indemnification</u>.  BMHC shall indemnify and hold harmless the Agent, each Lender, affiliates of the Agent and each Lender and each of their respective partners, directors, officers, employees, advisors and agents (each an "**<u>Indemnified Party</u>**") from and against any and all losses, claims, damages, liabilities and related expenses (including the fees, charges and disbursements of any counsel for any Indemnified Party), and shall indemnify and hold harmless each Indemnified Party from all fees and time charges and disbursements for attorneys who may be employees of any Indemnified Party, incurred by any Indemnified Party or asserted against any Indemnified Party by any third party or by BMHC or any other Debtor arising out of, in connection with, or as a result of (i) the execution or delivery of the DIP Credit Agreement, any other Loan Document, the performance by the parties hereto of their respective obligations thereunder, the consummation of the transactions contemplated thereby, or, in the case of the Agent (and any sub-agent thereof) and its related parties only, the administration of the DIP Credit Agreement and the other Loan Documents, (ii) any loan or letter of credit or the use or proposed use of the proceeds therefrom, (iii) certain environmental claims related in any way to BMHC or any of its subsidiaries, or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing; provided that such indemnity shall not, as to any Indemnified Party, be available to the extent that such losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnified Party or (y) result from a claim brought by BMHC or any other Debtor against an Indemnified Party for breach in bad faith of such Indemnified Party's obligations under any Loan Document, if BMHC or such other Debtor has obtained a final and nonappealable judgment in its favor on such claim as determined by a court of competent jurisdiction.

(n)     No Third Party Beneficiary.  No party not referenced in this Order is intended to be or shall be deemed to be a third party beneficiary of the provisions of this Order or any of the DIP Documents.

(o)     Action by Lenders.  Any action authorized to be taken on behalf of the Lenders as a whole by less than all of the Lenders or by the Agent pursuant the terms of any of the DIP Documents shall be deemed to be the action of the Lenders under this Order.

(p)     Amendment of Order.  The Debtors shall, with the consent of the Agent, be entitled to amend this Order so as to make any non-substantive, non-material changes. Notice of any amendment of the Order shall be provided to all parties entitled to receive notice of such amended Order.

(q)     Order Controlling.  To the extent any terms of this Order are inconsistent with the terms set forth in the DIP Documents, the terms of this Order shall control.

16.     **Limitations on Liens.**  Notwithstanding anything in this Order to the contrary, nothing herein or in the DIP Documents shall be deemed to authorize or grant a lien or security interest in favor of the Agent or the Lenders in or on the collateral securing the Other Secured Debt.

17.     **Immediate Effectiveness.**  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule, this Order shall be valid and fully effective immediately upon its entry, and, upon such entry, shall be binding upon and inure to the benefit of the Agent, the Lenders, the Debtors, their estates, and their respective successors and assigns (including, without limitation, any trustee, examiner, or responsible person hereinafter appointed as a representative of any of the estates in these or any subsequent proceedings under the Bankruptcy Code), and the terms and provisions of this Order as well as the liens, security

interests, and mortgages and other terms of the DIP Credit Agreement and the other DIP Documents shall continue in these proceedings and any superseding proceedings under the Bankruptcy Code or otherwise, and such liens, security interests, and mortgages shall maintain their priority as provided by this Order, until satisfied and discharged. This Order likewise shall be immediately binding and effective on the terms set forth above with respect to any other debtor that shall become part of the Chapter 11 Cases upon the filing of a bankruptcy petition or entry of the order for relief for such debtor, and, at such time, such debtor shall be deemed party to all of the DIP Documents.

18. **Final Hearing Date.** The Final Hearing to consider entry of the Final Order approving the relief sought in the DIP Motion shall be held on [ _July 1_, 2009 at _4:30 pm_ (prevailing Eastern Time) (as the same may be adjourned or continued by this Court) before the Honorable _Judge Carey_ at the United States Bankruptcy Court for the District of Delaware.

19. **Notice.** The Debtors shall, within three (3) Business Days, serve by mail a copy of this Order on the Notice Parties and any other persons which the Debtors know are entitled to notice under Bankruptcy Rule 4001(c). Any party-in-interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with this Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than on _June 24_, 2009 at _4:00 pm_ (prevailing Eastern Time) on the following: _for all parties respect any official committee, which shall have until Noon ET on July 1, 2009_

    (a)    Young, Conaway, Stargatt & Taylor, LLP, The Brandywine Building, 1000 West St., 17th Floor, Wilmington, Delaware, DE 19801 (Attn: Sean M. Beach, Esq. and Robert F. Poppiti, Jr., Esq. (Tel. (302) 571-6600; Facsimile (302) 571-1253) and Gibson, Dunn & Crutcher LLP, 200 Park Ave., 47th Floor, New York, New York 10166-0193 (Attn: Michael

A. Rosenthal, Esq. and Matthew K. Kelsey, Esq. (Tel. (212) 351-4000 and Facsimile (212) 351-4035), proposed counsel to Debtors;

(b)     Richards, Layton & Finger, P.A., One Rodney Square, 920 King Street, Wilmington, DE 19801 (Attn: Paul N. Heath, Esq. (Tel. (302) 651-7590, Facsimile (302) 498-7590)) and Paul, Hastings, Janofsky & Walker, LLP, 55 Second Street, San Francisco, CA 94105-3441 (Attn: Kevin B. Fisher, Esq. (Tel. (415) 856-7219, Facsimile ((415) 856-7200) and 75 East 55th Street, New York, New York 10022 (Attn: Thomas L. Kent, Esq. (Tel. (212) 318-6060 and Facsimile (212) 230-7899), counsel to the Prepetition Administrative Agent and Agent; and

(c)     Office of the United States Trustee for the District of Delaware, 844 King street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Joseph J. McMahon, Jr. (Tel. (302) 573-6491, Facsimile (302) 573-6497).

Dated:  Wilmington, Delaware
        June 17, 2009

_____
UNITED STATES BANKRUPTCY JUDGE