IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **IN RE:** | ) | **Chapter 11** |
|  | ) |  |
| **BUILDING MATERIALS HOLDING** | ) | **Case No. 09-12074 (KJC)** |
| **CORPORATION, et al.,**[1] | ) |  |
|  | ) | **Jointly Administered** |
| **Debtors.** | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**JOINT PLAN OF REORGANIZATION FOR THE DEBTORS**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AMENDED OCTOBER 1, 2009**

**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal (admitted pro hac vice)
Matthew K. Kelsey (admitted pro hac vice)
Aaron G. York (admitted pro hac vice)
200 Park Avenue
New York, New York 10166-0193
Telephone:     212.351.4000
Facsimile:      212.351.4035
Email:  *mrosenthal@gibsondunn.com*
            *mkelsey@gibsondunn.com*
            *ayork@gibsondunn.com*

**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**
Sean M. Beach (No. 4070)
Donald J. Bowman, Jr. (No. 4383)
Robert F. Poppiti, Jr. (No. 5052)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:     302.571.6600
Facsimile:      302.571.1253
Email:  *sbeach@ycst.com*
            *dbowman@ycst.com*
            *rpoppiti@ycst.com*

**ATTORNEYS FOR THE DEBTORS AND**
**DEBTORS IN POSSESSION**

Dated:  Wilmington, Delaware
             October 1, 2009

---

[1]  The Debtors, along with the last four digits of each Debtor's tax identification number, are as follows: Building Materials Holding Corporation (4269), BMC West Corporation (0454), SelectBuild Construction, Inc. (1340), SelectBuild Northern California, Inc. (7579), Illinois Framing, Inc. (4451), C Construction, Inc. (8206), TWF Construction, Inc. (3334), H.N.R. Framing Systems, Inc. (4329), SelectBuild Southern California, Inc. (9378), SelectBuild Nevada, Inc. (8912), SelectBuild Arizona, LLC (0036), and SelectBuild Illinois, LLC (0792).  The mailing address for the Debtors is 720 Park Boulevard, Suite 200, Boise, Idaho 83712.

## TABLE OF CONTENTS

I.    DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ........................................................................................................................1

    1.1.   *Definitions.* ....................................................................................................1

    1.2.   *Rules of Construction.* ...................................................................................1

    1.3.   *Computation of Time.* ...................................................................................1

II.   TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND PROFESSIONAL COMPENSATION CLAIMS AGAINST THE DEBTORS ................................................................................................................2

    2.1.   *Administrative Expense Claims.* ...................................................................2

    2.2.   *Professional Compensation Claims.* .............................................................2

    2.3.   *Priority Tax Claims.* .....................................................................................2

    2.4.   *DIP Facility.* ................................................................................................3

    2.5.   *U.S. Trustee Fees.* ........................................................................................3

III.  CLASSIFICATION OF CLAIMS AGAINST AND INTERESTS IN DEBTORS ......................3

    3.1.   *Classification of Claims.* ..............................................................................3

    3.2.   *Classes.* .......................................................................................................3

    3.3.   *Effect of Non-Voting; Modifications.* ..........................................................10

IV.  TREATMENT OF CLAIMS AND INTERESTS AND DESIGNATION WITH RESPECT TO IMPAIRMENT ....................................................................................11

    4.1.   *Treatment of Classes 1(a)-(l): Other Priority Claims.* ...................................11

    4.2.   *Treatment of Classes 2(a)-(l): Funded Lender Claims.* ..................................11

    4.3.   *Treatment of Classes 3(a)-(l): L/C Lender Claims.* .......................................11

    4.4.   *Treatment of Classes 4(a)-(l) – Other Secured Claims.* .................................13

    4.5.   *Treatment of Classes 5(a)-(l): L/C General Unsecured Claims.* ....................13

    4.6.   *Treatment of Classes 6(a)-(l): General Unsecured Claims.* ...........................13

    4.7.   *Treatment of Classes 7(a)-(l): Intercompany Claims.* ....................................19

    4.8.   *Treatment of Classes 8(a)-(l) – Small Unsecured Claims.* .............................19

    4.9.   *Treatment of Classes 9(a)-(l): Interests.* ......................................................20

    4.10.  *Treatment of Classes 10(a)-(l): Section 510(b) Claims.* ................................20

V.   PROVISIONS REGARDING VOTING, EFFECT OF REJECTION BY IMPAIRED CLASSES, AND CONSEQUENCES OF NON-CONFIRMABILITY ......................................20

    5.1.   *Voting Rights.* ............................................................................................20

    5.2.   *Acceptance Requirements.* ...........................................................................21

DB02:8792766.1                                068301.1001

|  | 5.3. | *Cramdown.* | 21 |
|---|---|---|---|
|  | 5.4. | *Tabulation of the Votes.* | 21 |
|  | 5.5. | *Non-Confirmability.* | 21 |
| VI. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 21 |
|  | 6.1. | *Assumption and Rejection of Contracts and Unexpired Leases.* | 21 |
|  | 6.2. | *Vacation/Personal Time Off Programs and Agreements.* | 21 |
|  | 6.3. | *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* | 22 |
|  | 6.4. | *Cure of Defaults.* | 22 |
|  | 6.5. | *Contracts and Leases Entered into after the Petition Date.* | 22 |
|  | 6.6. | *Modifications, Amendments, Supplements, Restatements, or Other Agreements.* | 23 |
|  | 6.7. | *Reservation of Rights.* | 23 |
| VII. | | MEANS OF IMPLEMENTATION OF THE PLAN | 23 |
|  | 7.1. | *General Settlement of Claims.* | 23 |
|  | 7.2. | *Sources of Consideration for Plan Distributions.* | 23 |
|  | 7.4. | *Continued Corporate Existence.* | 25 |
|  | 7.5. | *Revesting of Assets.* | 25 |
|  | 7.6. | *Merger.* | 25 |
|  | 7.7. | *Cancellation of Securities and Agreements.* | 25 |
|  | 7.8. | *Reorganized BMHC.* | 26 |
|  | 7.9. | *Post Effective Date Management.* | 26 |
|  | 7.10. | *Directors and Officers of the Reorganized Debtors.* | 26 |
|  | 7.11. | *New Certificates of Incorporation and New Bylaws of the Reorganized Debtors.* | 26 |
|  | 7.12. | *New Employment, Retirement, Indemnification, and Other Related Agreements.* | 26 |
|  | 7.13. | *Effectuating Documents; Further Transactions.* | 27 |
|  | 7.14. | *Corporate Action.* | 27 |
|  | 7.15. | *Section 1146 Exemption.* | 27 |
|  | 7.16. | *Preservation of Causes of Action.* | 27 |
|  | 7.17. | *Insurance Policies and Agreements.* | 28 |
|  | 7.18. | *Nonoccurrence of Effective Date.* | 28 |
|  | 7.19. | *Collective Bargaining Agreements.* | 29 |
| VIII. | | METHOD OF DISTRIBUTIONS UNDER THE PLAN AND CLAIMS RECONCILIATION | 29 |
|  | 8.1. | *Disbursing Agent.* | 29 |
|  | 8.2. | *Distribution Record Date.* | 29 |

DB02:8792766.1

068301.1001

8.3.   *Cash Payments.* ....................................................................................................29

8.4.   *Delivery of Distributions.* .......................................................................................29

8.5.   *Minimum Cash Distributions.* ...............................................................................29

8.6.   *Withholding Taxes.* ................................................................................................29

8.7.   *Unclaimed Property.* ..............................................................................................30

8.9    *Disputed Claims.* ....................................................................................................30

8.10.  *Objections to Claims.* .............................................................................................30

8.11.  *Compromises and Settlements.* ..............................................................................30

8.12.  *Reservation of Debtors' Rights.* .............................................................................30

8.13.  *No Distributions Pending Allowance.* ...................................................................30

8.14.  *No Postpetition Interest on Claims.* .......................................................................31

8.15.  *Claims Paid or Payable by Third Parties.* .............................................................31

IX.    EFFECT OF CONFIRMATION OF PLAN .........................................................31

9.1.   *Discharge.* ...............................................................................................................31

9.2.   *Releases.* .................................................................................................................32

9.3.   *No Successor Liability.* ..........................................................................................35

9.4.   *Release of Liens.* ....................................................................................................35

9.5.   *Term of Injunctions.* ..............................................................................................35

9.6.   *Binding Effect.* .......................................................................................................35

9.7.   *Dissolution of the Committee.* ...............................................................................35

9.8.   *Post-Confirmation Date Retention of Professionals.* ............................................35

X.     EFFECTIVENESS OF THE PLAN ......................................................................35

10.1.  *Conditions Precedent.* ............................................................................................35

10.2.  *Effect of Failure of Conditions.* ............................................................................37

XI.    RETENTION OF JURISDICTION .......................................................................37

11.1.  *Bankruptcy Court.* ..................................................................................................37

XII.   MISCELLANEOUS PROVISIONS ......................................................................39

12.1.  *Plan Supplement.* ...................................................................................................39

12.2.  *Exemption for Registration Requirements.* ...........................................................39

12.3.  *Statutory Fees.* .......................................................................................................39

12.4.  *Third Party Agreements.* ........................................................................................39

12.5.  *Amendment or Modification of Plan.* ....................................................................39

12.6.  *Severability.* ...........................................................................................................39

DB02:8792766.1                                                                                    068301.1001

12.7.   *Revocation or Withdrawal of Plan.* ................................................................40

12.8.   *Rules Governing Conflicts Between Documents.* .............................................40

12.9.   *Governing Law.* ..............................................................................................40

12.10. *Notices.* ...........................................................................................................40

12.11. *Interest and Attorneys' Fees.* .........................................................................41

12.12. *Binding Effect.* ...............................................................................................41

12.13. *No Admissions.* ..............................................................................................41

12.14. *Exhibits.* .........................................................................................................41

DB02:8792766.1

068301.1001

## INTRODUCTION

Building Materials Holding Corporation, BMC West Corporation, SelectBuild Construction, Inc., SelectBuild Northern California, Inc., Illinois Framing, Inc., C Construction, Inc., TWF Construction, Inc., H.N.R. Framing Systems, Inc., SelectBuild Southern California, Inc., SelectBuild Nevada, Inc., SelectBuild Arizona, LLC, and SelectBuild Illinois, LLC, as debtors and debtors in possession (collectively, the "***Debtors***"), respectfully propose the following Joint Plan of Reorganization pursuant to section 1121(a) of the Bankruptcy Code for the resolution of outstanding Claims against and Interests in each of the Debtors (the "***Plan***").

Reference is made to the Disclosure Statement with respect to the Plan, distributed contemporaneously herewith, for a discussion of the Debtors' history, businesses, properties, operations, risk factors, a summary and analysis of the Plan, and certain related matters including the securities to be issued under the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors respectfully reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to consummation of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.

## I.
## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1.** ***Definitions.*** As used in the Plan, capitalized terms not otherwise defined herein shall have the meanings specified in Appendix A. Unless the context otherwise requires, any capitalized term used and not defined in the Plan, but that is defined in the Bankruptcy Code, shall have the meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.

**1.2.** ***Rules of Construction.*** For purposes of the Plan, unless otherwise provided herein: (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement, whether existing or contemplated, or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (ii) unless otherwise specified, all references in the Plan to the Introduction, Articles, and Sections are references to the Introduction, Articles, and Sections of or to the Plan, (iii) captions and headings to Articles and Sections are intended for convenience of reference only and are not intended to be part of or to affect interpretation of the Plan, (iv) the words "herein," "hereof," "hereunder," "hereto," and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan, (v) whenever it appears appropriate from the context, each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter, and (vi) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.3.** ***Computation of Time.*** In computing time prescribed or allowed by the Plan, unless otherwise expressly provided, Bankruptcy Rule 9006(a) shall apply.

## II.
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND PROFESSIONAL COMPENSATION CLAIMS AGAINST THE DEBTORS

**2.1.** *Administrative Expense Claims.* On the later of (i) the Effective Date or (ii) if the Administrative Expense Claim is not Allowed as of the Effective Date, 30 days after the date on which an Administrative Expense Claim becomes Allowed, the Debtors or Reorganized Debtors shall either (x) pay to each Holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim, or (y) satisfy and discharge such Administrative Expense Claim in accordance with such other terms that the Debtors or Reorganized Debtors and such Holder shall have agreed upon; *provided, however,* that such agreed-upon treatment shall not be more favorable than the treatment provided in clause (x). Other than with respect to Professional Compensation Claims and Cure Claims, notwithstanding anything in the Plan to the contrary (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release), (a) if an Administrative Expense Claim arises (i) based on liabilities incurred in, or to be paid in, the ordinary course of business during the Postpetition Period or (ii) pursuant to an Executory Contract (including, but not limited to, the Debtors' Insurance Policies and Agreements that are treated as Executory Contracts under the Plan), the Holder of such Administrative Expense Claim shall be paid in Cash by the applicable Debtor (or after the Effective Date, by the applicable Reorganized Debtor) pursuant to the terms and conditions of the particular transaction and/or agreements giving rise to such Administrative Expense Claim without the need or requirement for the Holder of such Administrative Expense Claim to file a motion, application, claim or request for allowance or payment of an Administrative Expense Claim with the Bankruptcy Court and (b) such Administrative Expense Claims shall be Allowed Claims; *provided, however,* that nothing limits the ability of any applicable Debtor or Reorganized Debtor to dispute (or the Holder of such Administrative Expense Claim to assert and/or defend) the validity or amount of any such Administrative Expense Claim and/or to bring an action in the appropriate forum.

**2.2.** *Professional Compensation Claims.* Notwithstanding any other provision of the Plan dealing with Administrative Expense Claims, any Person asserting a Professional Compensation Claim shall, no later than thirty (30) days after the Confirmation Date, file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date. To the extent that such an award is granted by the Bankruptcy Court, the requesting Person shall receive: (i) payment of Cash in an amount equal to the amount Allowed by the Bankruptcy Court less all interim compensation paid to such Professional during the Chapter 11 Cases, such payment to be made within the later of (a) the Effective Date or (b) three (3) business days after the Order granting such Person's final fee application becomes a Final Order; (ii) payment on such other terms as may be mutually agreed upon by the Holder of the Professional Compensation Claim and BMHC or Reorganized BMHC, as applicable (but in no event shall the payment exceed the amount Allowed by the Bankruptcy Court); or (iii) payment in accordance with the terms of any applicable administrative procedures orders entered by the Bankruptcy Court, including the Interim Compensation Order, dated July 16, 2009. All Professional Compensation Claims for services rendered after the Confirmation Date shall be paid by Reorganized BMHC (or the Debtors prior to the Effective Date) upon receipt of an invoice therefor, or on such other terms as Reorganized BMHC (or the Debtors prior to the Effective Date) and the Professional may agree, without the requirement of any order of the Bankruptcy Court.

**2.3.** *Priority Tax Claims.* Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**2.4.** *DIP Facility.* Notwithstanding any other provision of the Plan dealing with Administrative Expense Claims, Administrative Expense Claims arising under the DIP Facility shall be Allowed Administrative Expense Claims on the Effective Date and shall be paid in full in Cash on the Effective Date, and all excess Cash in the Cash Collateral Account shall remain with Reorganized BMHC.

**2.5.** *U.S. Trustee Fees.* U.S. Trustee Fees incurred by the U.S. Trustee prior to the Effective Date shall be paid on the Distribution Date in accordance with the applicable schedule for payment of such fees. Until each of the Chapter 11 Cases is closed by entry of a final decree of the Bankruptcy Court, the Reorganized Debtors shall pay additional U.S. Trustee Fees incurred in accordance with the applicable schedule for the payment of such fees.

## III.
## CLASSIFICATION OF CLAIMS AGAINST AND INTERESTS IN DEBTORS3.1.

*Classification of Claims.* Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn, or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims of the kinds specified in sections 507(a)(2) and 507(a)(8), respectively, of the Bankruptcy Code have not been classified and their treatment is set forth in Article II.

The Plan constitutes a separate chapter 11 subplan for each of the Debtors. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.

**3.2.** *Classes.* The Claims against and Interests in the Debtors are classified as follows:

**3.2.1.** *Classes 1(a)-(l): Other Priority Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1(a) | Other Priority Claims against BMHC | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(b) | Other Priority Claims against BMC West | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(c) | Other Priority Claims against SelectBuild Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(d) | Other Priority Claims against SelectBuild Northern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(e) | Other Priority Claims against Illinois Framing | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(f) | Other Priority Claims against C Construction | Unimpaired | Not entitled to vote (Deemed to accept) |

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1(g) | Other Priority Claims against TWF Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(h) | Other Priority Claims against H.N.R. Framing Systems | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(i) | Other Priority Claims against SelectBuild Southern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(j) | Other Priority Claims against SelectBuild Nevada | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(k) | Other Priority Claims against SelectBuild Arizona | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 1(l) | Other Priority Claims against SelectBuild Illinois | Unimpaired | Not entitled to vote (Deemed to accept) |

### 3.2.2. *Classes 2(a)-(l): Funded Lender Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 2(a) | Funded Lender Claims against BMHC | Impaired | Entitled to vote |
| Class 2(b) | Funded Lender Claims against BMC West | Impaired | Entitled to vote |
| Class 2(c) | Funded Lender Claims against SelectBuild Construction | Impaired | Entitled to vote |
| Class 2(d) | Funded Lender Claims against SelectBuild Northern California | Impaired | Entitled to vote |
| Class 2(e) | Funded Lender Claims against Illinois Framing | Impaired | Entitled to vote |
| Class 2(f) | Funded Lender Claims against C Construction | Impaired | Entitled to vote |
| Class 2(g) | Funded Lender Claims against TWF Construction | Impaired | Entitled to vote |
| Class 2(h) | Funded Lender Claims against H.N.R. Framing Systems | Impaired | Entitled to vote |
| Class 2(i) | Funded Lender Claims against SelectBuild Southern California | Impaired | Entitled to vote |
| Class 2(j) | Funded Lender Claims against SelectBuild Nevada | Impaired | Entitled to vote |
| Class 2(k) | Funded Lender Claims against SelectBuild Arizona | Impaired | Entitled to vote |

DB02:8792766.1

068301.1001

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 2(l) | Funded Lender Claims against SelectBuild Illinois | Impaired | Entitled to vote |

### 3.2.3. *Classes 3(a)-(l): L/C Lender Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 3(a) | L/C Lender Claims against BMHC | Impaired | Entitled to vote |
| Class 3(b) | L/C Lender Claims against BMC West | Impaired | Entitled to vote |
| Class 3(c) | L/C Lender Claims against SelectBuild Construction | Impaired | Entitled to vote |
| Class 3(d) | L/C Lender Claims against SelectBuild Northern California | Impaired | Entitled to vote |
| Class 3(e) | L/C Lender Claims against Illinois Framing | Impaired | Entitled to vote |
| Class 3(f) | L/C Lender Claims against C Construction | Impaired | Entitled to vote |
| Class 3(g) | L/C Lender Claims against TWF Construction | Impaired | Entitled to vote |
| Class 3(h) | L/C Lender Claims against H.N.R. Framing Systems | Impaired | Entitled to vote |
| Class 3(i) | L/C Lender Claims against SelectBuild Southern California | Impaired | Entitled to vote |
| Class 3(j) | L/C Lender Claims against SelectBuild Nevada | Impaired | Entitled to vote |
| Class 3(k) | L/C Lender Claims against SelectBuild Arizona | Impaired | Entitled to vote |
| Class 3(l) | L/C Lender Claims against SelectBuild Illinois | Impaired | Entitled to vote |

### 3.2.4. *Classes 4(a)-(l): Other Secured Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 4(a) | Other Secured Claims against BMHC | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(b) | Other Secured Claims against BMC West | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(c) | Other Secured Claims against SelectBuild Construction | Unimpaired | Not entitled to vote (Deemed to accept) |

DB02:8792766.1

068301.1001

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 4(d) | Other Secured Claims against SelectBuild Northern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(e) | Other Secured Claims against Illinois Framing | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(f) | Other Secured Claims against C Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(g) | Other Secured Claims against TWF Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(h) | Other Secured Claims against H.N.R. Framing Systems | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(i) | Other Secured Claims against SelectBuild Southern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(j) | Other Secured Claims against SelectBuild Nevada | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(k) | Other Secured Claims against SelectBuild Arizona | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 4(l) | Other Secured Claims against SelectBuild Illinois | Unimpaired | Not entitled to vote (Deemed to accept) |

### 3.2.5. *Classes 5(a)-(l): L/C General Unsecured Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 5(a) | L/C General Unsecured Claims against BMHC | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(b) | L/C General Unsecured Claims against BMC West | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(c) | L/C General Unsecured Claims against SelectBuild Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(d) | L/C General Unsecured Claims against SelectBuild Northern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(e) | L/C General Unsecured Claims against Illinois Framing | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(f) | L/C General Unsecured Claims against C Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(g) | L/C General Unsecured Claims against TWF Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(h) | L/C General Unsecured Claims against H.N.R. Framing Systems | Unimpaired | Not entitled to vote (Deemed to accept) |

DB02:8792766.1

068301.1001

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 5(i) | L/C General Unsecured Claims against SelectBuild Southern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(j) | L/C General Unsecured Claims against SelectBuild Nevada | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(k) | L/C General Unsecured Claims against SelectBuild Arizona | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 5(l) | L/C General Unsecured Claims against SelectBuild Illinois | Unimpaired | Not entitled to vote (Deemed to accept) |

### 3.2.6. *Classes 6(a)-(l): General Unsecured Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 6(a) | General Unsecured Claims against BMHC | Impaired | Entitled to vote |
| Class 6(b) | General Unsecured against BMC West | Impaired | Entitled to vote |
| Class 6(c) | General Unsecured Claims against SelectBuild Construction | Impaired | Entitled to vote |
| Class 6(d) | General Unsecured Claims against SelectBuild Northern California | Impaired | Entitled to vote |
| Class 6(e) | General Unsecured Claims against Illinois Framing | Impaired | Entitled to vote |
| Class 6(f) | General Unsecured Claims against C Construction | Impaired | Entitled to vote |
| Class 6(g) | General Unsecured Claims against TWF Construction | Impaired | Entitled to vote |
| Class 6(h) | General Unsecured Claims against H.N.R. Framing Systems | Impaired | Entitled to vote |
| Class 6(i) | General Unsecured Claims against SelectBuild Southern California | Impaired | Entitled to vote |
| Class 6(j) | General Unsecured Claims against SelectBuild Nevada | Impaired | Entitled to vote |
| Class 6(k) | General Unsecured Claims against SelectBuild Arizona | Impaired | Entitled to vote |
| Class 6(l) | General Unsecured Claims against SelectBuild Illinois | Impaired | Entitled to vote |

DB02:8792766.1

068301.1001

### 3.2.7. *Classes 7(a)-(l): Intercompany Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 7(a) | Intercompany Claims against BMHC | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(b) | Intercompany Claims against BMC West | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(c) | Intercompany Claims against SelectBuild Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(d) | Intercompany Claims against SelectBuild Northern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(e) | Intercompany Claims against Illinois Framing | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(f) | Intercompany against C Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(g) | Intercompany Claims against TWF Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(h) | Intercompany Claims against H.N.R. Framing Systems | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(i) | Intercompany Claims against SelectBuild Southern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(j) | Intercompany Claims against SelectBuild Nevada | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(k) | Intercompany Claims against SelectBuild Arizona | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 7(l) | Intercompany Claims against SelectBuild Illinois | Unimpaired | Not entitled to vote (Deemed to accept) |

### 3.2.8. *Classes 8(a)-(l): Small Unsecured Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 8(a) | Small Unsecured Claims against BMHC | Impaired | Entitled to vote |
| Class 8(b) | Small Unsecured against BMC West | Impaired | Entitled to vote |
| Class 8(c) | Small Unsecured Claims against SelectBuild Construction | Impaired | Entitled to vote |
| Class 8(d) | Small Unsecured Claims against SelectBuild Northern California | Impaired | Entitled to vote |
| Class 8(e) | Small Unsecured Claims against Illinois Framing | Impaired | Entitled to vote |

DB02:8792766.1  068301.1001

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 8(f) | Small Unsecured Claims against C Construction | Impaired | Entitled to vote |
| Class 8(g) | Small Unsecured Claims against TWF Construction | Impaired | Entitled to vote |
| Class 8(h) | Small Unsecured Claims against H.N.R. Framing Systems | Impaired | Entitled to vote |
| Class 8(i) | Small Unsecured Claims against SelectBuild Southern California | Impaired | Entitled to vote |
| Class 8(j) | Small Unsecured Claims against SelectBuild Nevada | Impaired | Entitled to vote |
| Class 8(k) | Small Unsecured Claims against SelectBuild Arizona | Impaired | Entitled to vote |
| Class 8(l) | Small Unsecured Claims against SelectBuild Illinois | Impaired | Entitled to vote |

### 3.2.9. *Classes 9(a)-(l): Interests.*

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 9(a) | Interests in BMHC | Impaired | Not entitled to vote (Deemed to reject) |
| Class 9(b) | Interests in BMC West | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(c) | Interests in SelectBuild Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(d) | Interests in SelectBuild Northern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(e) | Interests in Illinois Framing | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(f) | Interests in C Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(g) | Interests in TWF Construction | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(h) | Interests in H.N.R. Framing Systems | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(i) | Interests in SelectBuild Southern California | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(j) | Interests in SelectBuild Nevada | Unimpaired | Not entitled to vote (Deemed to accept) |

DB02:8792766.1 068301.1001

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 9(k) | Interests in SelectBuild Arizona | Unimpaired | Not entitled to vote (Deemed to accept) |
| Class 9(l) | Interests in SelectBuild Illinois | Unimpaired | Not entitled to vote (Deemed to accept) |

### 3.2.10. *Class 10(a)-(l): Section 510(b) Claims.*

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 10(a) | Section 510(b) Claims against BMHC | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(b) | Section 510(b) Claims against BMC West | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(c) | Section 510(b) Claims against SelectBuild Construction | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(d) | Section 510(b) Claims against SelectBuild Northern California | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(e) | Section 510(b) Claims against Illinois Framing | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(f) | Section 510(b) Claims against C Construction | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(g) | Section 510(b) Claims against TWF Construction | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(h) | Section 510(b) Claims against H.N.R. Framing Systems | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(i) | Section 510(b) Claims against SelectBuild Southern California | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(j) | Section 510(b) Claims against SelectBuild Nevada | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(k) | Section 510(b) Claims against SelectBuild Arizona | Impaired | Not entitled to vote (Deemed to reject) |
| Class 10(l) | Section 510(b) Claims against SelectBuild Illinois | Impaired | Not entitled to vote (Deemed to reject) |

**3.3.** *Effect of Non-Voting; Modifications.* At the Confirmation Hearing, the Debtors will seek a ruling that if no Holder of a Claim or Interest eligible to vote in a particular Class timely votes to accept or reject the Plan, the Plan will be deemed accepted by the Holders of such Claims or Interests in such Class for the purposes of section 1129(b) of the Bankruptcy Code. Subject to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to modify the Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, provided such modifications are consistent with Section 12.5 of the Plan.

DB02:8792766.1
068301.1001

# IV.
# TREATMENT OF CLAIMS AND INTERESTS AND DESIGNATION WITH RESPECT TO IMPAIRMENT

**4.1.** *Treatment of Classes 1(a)-(l): Other Priority Claims.*

**4.1.1.** *Impairment and Voting.* Classes 1(a)-(l) are Unimpaired by the Plan. Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**4.1.2.** *Treatment.* On the Distribution Date, each Holder of an Allowed Other Priority Claim shall receive in full satisfaction, release, and discharge of and in exchange for such Claim: (i) payment of Cash in an amount equal to the unpaid portion of such Allowed Other Priority Claim, or (ii) such other treatment that the Debtors and such Holder shall have agreed upon in writing; *provided, however,* that such agreed-upon treatment shall not be more favorable than the treatment provided in clause (i).

**4.2.** *Treatment of Classes 2(a)-(l): Funded Lender Claims.*

**4.2.1.** *Impairment and Voting.* Classes 2(a)-(l) are Impaired by the Plan. Each Holder of an Allowed Funded Lender Claim as of the Record Date is entitled to vote to accept or reject the Plan.

**4.2.2.** *Treatment.* Each Holder of an Allowed Funded Lender Claim shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive (i) the Funded Lender's Share of Sale Cash Collateral Excess Proceeds Account Effective Date Amount as to such Claim, (ii) a Term Note issued by Reorganized BMHC under the Term Loan Credit Agreement in an original principal amount equal to the Maximum Funded Lenders Term Note Cap multiplied by such Holder's Pro Rata share of all Allowed Funded Lender Claims, and (iii) its Pro Rata share of the Reorganized BMHC Equity Interest Funded Lender Issuance, subject to dilution by (a) any Reorganized BMHC Equity Interests issued on the Effective Date and from time to time thereafter to the Holders of Allowed L/C Lender Claims and (b) any Reorganized BMHC Equity Interests issued after the Effective Date in respect of the Long Term Incentive Plan.

**4.3.** *Treatment of Classes 3(a)-(l): L/C Lender Claims.*

**4.3.1.** *Impairment and Voting.* Classes 3(a)-(l) are Impaired by the Plan. Each Holder of an Allowed L/C Lender Claim as of the Record Date is entitled to vote to accept or reject the Plan.

**4.3.2.** *Treatment.* Allowed L/C Lender Claims shall be treated as follows:

4.3.2.1. From and after the Effective Date, obligations of the Prepetition L/C Lenders (whether WFB, as the letter of credit issuer under the Prepetition Credit Agreement, or the Prepetition Revolving Lenders in respect of their several reimbursement obligations to WFB arising under the Prepetition Credit Agreement) shall continue to be governed by the lender reimbursement provisions of the Prepetition Credit Agreement. Reorganized BMHC shall have no obligations whatsoever in respect of the letter of credit reimbursement obligations arising in respect of the Prepetition Letters of Credit, except (a) the Holders of Allowed L/C Lender Claims shall be entitled to the L/C Lender Fee and (b) as expressly set forth in the following Section 4.3.2.2. All Liens with

respect to the Prepetition Credit Agreement shall be released, discharged, and extinguished.

4.3.2.2. To the extent any Allowed L/C Lender Claim is liquidated on or after the Petition Date, each Holder of an Allowed L/C Lender Claim shall, in full satisfaction, release, and discharge of and in exchange for the Liquidated L/C Amount of such Claim, receive the following on the Effective Date and thereafter from time to time if, as and when Allowed L/C Lender Claims are liquidated:

(A)     a Term Note issued by Reorganized BMHC under the Term Loan Credit Agreement in an original principal amount equal to the Maximum L/C Lenders Term Note Cap multiplied by the ratio (expressed as a percentage) that such Liquidated L/C Amount of such Claim bears to the aggregate amount of all Allowed L/C Lender Claims; and

(B)     with respect to any Allowed L/C Lender Claim liquidated from and after the Petition Date through the Effective Date, its Pro Rata share of the Reorganized BMHC Equity Interest L/C Lender Issuance, subject to dilution by (a) the Reorganized BMHC Equity Interests issued on the Effective Date to the Holders of Allowed Funded Lender Claims, (b) any Reorganized BMHC Equity Interests issued from time to time after the Effective Date to the Holders of Allowed L/C Lender Claims and (c) any Reorganized BMHC Equity Interests issued after the Effective Date in respect of the Long Term Incentive Plan; and

(C)     with respect to any Allowed L/C Lender Claim liquidated after the Effective Date, an amount of the Reorganized BMHC Equity Interests, rounded to the nearest whole number, equal to the Liquidated L/C Amount of such Claim multiplied by the L/C Lender Claim Equity Conversion Ratio, subject to dilution by any Reorganized BMHC Equity Interests issued after the Effective Date in respect of the Long Term Incentive Plan; and

(D)     On the Effective Date only, the L/C Lender's Share of the Sale Cash Collateral Excess Proceeds Account Effective Date Amount as to such Liquidated L/C Amount of such Claim on the Effective Date.

4.3.2.3. If, and only to the extent, a Prepetition L/C Lender fails to reimburse in full WFB in respect of its reimbursement obligation to WFB arising under the Prepetition Credit Agreement, WFB shall be entitled to receive the distribution described in the preceding Section 4.3.2.2 which would otherwise be payable to such defaulting Prepetition L/C Lender.

4.3.2.4. Prepetition Letters of Credit shall not be used by the Reorganized Debtors to collateralize obligations that do not exist as of the Effective Date; *provided, however*, that notwithstanding the foregoing, Prepetition Letters of Credit shall continue to collateralize all obligations under Insurance Policies and Agreements and/or performance bonds (and any agreements, documents or instruments relating thereto) secured by such Prepetition Letters of Credit, whether such obligations exist as of the Effective Date or arise thereafter; and such Prepetition Letters of Credit and obligations shall survive the Effective Date unaffected and unaltered by the Plan. No issuer of Prepetition Letters of Credit shall have any obligation to renew a Prepetition Letter of Credit for a period beyond the Maturity Date under the Term Loan Credit Agreement (as

such term is defined therein); provided that this sentence shall not impair or affect the rights of any beneficiary under any Prepetition Letter of Credit.

4.3.2.5. Allowed L/C Lender Claims or any portions thereof that are not liquidated prior to the occurrence of the Maturity Date of the Term Loan Credit Agreement (as such term is defined in the Term Loan Credit Agreement), shall be extinguished, and any outstanding Prepetition Letters of Credit at that time shall be cancelled and replaced by the Reorganized Debtors as and to the extent necessary in accordance with their business judgment.

**4.4.** *Treatment of Classes 4(a)-(l) – Other Secured Claims.*

**4.4.1.** *Impairment and Voting.* Classes 4(a)-(l) are Unimpaired by the Plan. Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**4.4.2.** *Treatment.* Except to the extent that a Holder of an Other Secured Claim, including a secured tax claim, agrees to a less favorable treatment, in full satisfaction, settlement, release, and discharge of and in exchange for each Other Secured Claim, each Allowed Other Secured Claim shall be reinstated or otherwise rendered Unimpaired. Allowed Secured Tax Claims may be treated in accordance with the terms set forth in section 1129(a)(9)(D) of the Bankruptcy Code and any interest required to be paid on Allowed secured tax claims will be paid in accordance with section 511 of the Bankruptcy Code.

**4.5.** *Treatment of Classes 5(a)-(l): L/C General Unsecured Claims.*

**4.5.1.** *Impairment and Voting.* Classes 5(a)-(l) are Unimpaired by the Plan. Each Holder of an Allowed L/C General Unsecured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**4.5.2.** *Treatment.* Except to the extent that a Holder of an L/C General Unsecured Claim agrees to a less favorable treatment, each L/C General Unsecured Claim shall be reinstated, paid in full, or otherwise rendered Unimpaired and the applicable Reorganized Debtors shall remain liable for the L/C General Unsecured Claim, whether now existing or hereafter arising.

**4.6.** *Treatment of Classes 6(a)-(l): General Unsecured Claims.*

**4.6.1.** *Impairment and Voting.* Classes 6(a)-(l) are Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim as of the Record Date is entitled to vote to accept or reject the Plan.

**4.6.2.** *Treatment.*

4.6.2.1. *Class 6(a) if Such Class Votes to Accept the Plan.* If Class 6(a) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against BMHC shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the BMHC Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against BMHC shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making

the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.2. *Class 6(a) if Such Class Votes to Reject the Plan.* Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(a) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against BMHC shall be cancelled and discharged without any distribution.

4.6.2.3. *Class 6(b) if Such Class Votes to Accept the Plan.* If Class 6(b) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against BMC West shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the BMC West Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against BMC West shall be entitled, by exercise of the election set forth on the Ballot with respect to such Allowed General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.4. *Class 6(b) if such Class Votes to Reject the Plan.* Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(b) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against BMC West shall be cancelled and discharged without any distribution.

4.6.2.5. *Class 6(c) if Such Class Votes to Accept the Plan.* If Class 6(c) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against SelectBuild Construction shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the SelectBuild Construction Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against SelectBuild Construction shall be entitled, by exercise of the election set forth on the Ballot with respect to such Allowed General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all

Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.6. *Class 6(c) if Such Class Votes to Reject the Plan.* Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(c) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against SelectBuild Construction shall be cancelled and discharged without any distribution.

4.6.2.7. *Class 6(d) if Such Class Votes to Accept the Plan.* If Class 6(d) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against SelectBuild Northern California shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the SelectBuild Northern California Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against SelectBuild Northern California shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.8. *Class 6(d) if Such Class Votes to Reject the Plan.* Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(d) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against SelectBuild Northern California shall be cancelled and discharged without any distribution..

4.6.2.9. *Class 6(e) if Such Class Votes to Accept the Plan.* If Class 6(e) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against Illinois Framing shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the Illinois Framing Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against Illinois Framing shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall

constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.10. ***Class 6(e) if Such Class Votes to Reject the Plan.*** Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(e) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against Illinois Framing shall be cancelled and discharged without any distribution.

4.6.2.11. ***Class 6(f) if Such Class Votes to Accept the Plan.*** If Class 6(f) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against C Construction shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the C Construction Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against C Construction shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.12. ***Class 6(f) if Such Class Votes to Reject the Plan.*** Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(f) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against C Construction shall be cancelled and discharged without any distribution.

4.6.2.13. ***Class 6(g) if Such Class Votes to Accept the Plan.*** If Class 6(g) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against TWF Construction shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the TWF Construction Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against TWF Construction shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall

DB02:8792766.1 068301.1001

have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.14. ***Class 6(g) if Such Class Votes to Reject the Plan.*** Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(g) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against TWF Construction shall be cancelled and discharged without any distribution.

4.6.2.15. ***Class 6(h) if Such Class Votes to Accept the Plan.*** If Class 6(h) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against H.N.R. Framing Systems shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the H.N.R. Framing Systems Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against H.N.R. Framing Systems shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.16. ***Class 6(h) if Such Class Votes to Reject the Plan.*** Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(h) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against H.N.R. Framing Systems shall be cancelled and discharged without any distribution.

4.6.2.17. ***Class 6(i) if Such Class Votes to Accept the Plan.*** If Class 6(i) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against SelectBuild Southern California shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the SelectBuild Southern California Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against SelectBuild Southern California shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6

treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.18. **_Class 6(i) if Such Class Votes to Reject the Plan._** Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(i) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against SelectBuild Southern California shall be cancelled and discharged without any distribution.

4.6.2.19. **_Class 6(j) if Such Class Votes to Accept the Plan._** If Class 6(j) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against SelectBuild Nevada shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the SelectBuild Nevada Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against SelectBuild Nevada shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.20. **_Class 6(j) if Such Class Votes to Reject the Plan._** Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(j) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against SelectBuild Nevada shall be cancelled and discharged without any distribution.

4.6.2.21. **_Class 6(k) if Such Class Votes to Accept the Plan._** If Class 6(k) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against SelectBuild Arizona shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the SelectBuild Arizona Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against SelectBuild Arizona shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall

have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.22. **Class 6(k) if Such Class Votes to Reject the Plan.** Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(k) votes to reject the Plan, on the Effective Date, all General Unsecured Claims against SelectBuild Arizona shall be cancelled and discharged without any distribution.

4.6.2.23. **Class 6(l) if Such Class Votes to Accept the Plan.** If Class 6(l) votes to accept the Plan, on the Distribution Date, each Holder of an Allowed General Unsecured Claim against SelectBuild Illinois shall, in full satisfaction, release, and discharge of and in exchange for such Claim, receive its Pro Rata share of the SelectBuild Illinois Unsecured Distribution. Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim against SelectBuild Illinois shall be entitled, by exercise of the election set forth on the Ballot with respect to such General Unsecured Claim, to make the Small Unsecured Claims Class Election. Making the Small Unsecured Claims Class Election is voluntary. By making the Small Unsecured Claims Class Election for any Allowed General Unsecured Claim against any Debtor, such Holder will be deemed to have made such Election with respect to all Allowed General Unsecured Claims held by such Holder against all Debtors and to have agreed to reduce the amount of its aggregate Allowed General Unsecured Claims against all Debtors to the lesser of (a) the amount of such aggregate claims or (b) $5,000. Making the Small Unsecured Claims Class Election shall constitute an acceptance of the Plan and will indicate the Holder's agreement to waive Class 6 treatment; instead, such Holder shall have a Class 8 Small Unsecured Claim and receive the treatment specified in section 4.8 of the Plan.

4.6.2.24. **Class 6(l) if Such Class Votes to Reject the Plan.** Unless WFB as agent for the Prepetition Lenders elects otherwise in writing prior to the Confirmation Hearing, if Class 6(l) votes to reject Plan, on the Effective Date, all General Unsecured Claims against SelectBuild Illinois shall be cancelled and discharged without any distribution.

**4.7.** *Treatment of Classes 7(a)-(l): Intercompany Claims.*

4.7.1. *Impairment and Voting.* Classes 7(a)-(l) are Unimpaired by the Plan. Each Holder of an Allowed Intercompany Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.7.2. *Treatment.* To preserve the Debtors' corporate structure, Intercompany Claims may be reinstated as of the Effective Date or, at the Debtors' or Reorganized Debtors' option, be cancelled, and no distributions shall be made on account of such Claims.

**4.8.** *Treatment of Classes 8(a)-(l) – Small Unsecured Claims.*

4.8.1. *Impairment and Voting.* Classes 8(a)-(l) are Impaired by the Plan. Each Holder of a Small Unsecured Claim as of the Record Date is entitled to vote to accept or reject the Plan.

4.8.2. *Treatment.* On the Distribution Date, each Holder of a Small Unsecured Claim shall receive, in full satisfaction, release, and discharge of and in exchange for all Allowed General

Unsecured Claims held by such Holder against all Debtors, Cash equal to the lesser of (i) 25% of the Allowed Amount of all Allowed General Unsecured Claims held by such Holder against all Debtors (excluding any interest) or (ii) $1,250; *provided, however,* that the Small Unsecured Claims Class Election shall only be effective upon entry of the Confirmation Order and the occurrence of the Effective Date.

**4.9.** *Treatment of Classes 9(a)-(l): Interests.*

**4.9.1.** *Impairment and Voting.*

4.9.1.1. *Class 9(a).* Class 9(a) is Impaired by the Plan. Each Holder of an Interest in BMHC is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

4.9.1.2. *Classes 9(b)-(l).* Classes 9(b)-(l) are Unimpaired by the Plan. Each Holder of an Interest in BMC West, SelectBuild Construction, SelectBuild Northern California, Illinois Framing, C Construction, TWF Construction, H.N.R. Framing Systems, SelectBuild Southern California, SelectBuild Nevada, SelectBuild Arizona and/or SelectBuild Illinois is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**4.9.2.** *Treatment.*

4.9.2.1. *Class 9(a).* On the Effective Date, all Interests in BMHC shall be cancelled without further distribution.

4.9.2.2. *Classes 9(b)-(l).* In full and final satisfaction, settlement, release, and discharge of and in exchange for each Intercompany Interest, Intercompany Interests in each of BMC West, SelectBuild Construction, SelectBuild Northern California, Illinois Framing, C Construction, TWF Construction, H.N.R. Framing Systems, SelectBuild Southern California, SelectBuild Nevada, SelectBuild Arizona and SelectBuild Illinois shall be reinstated for the benefit of the Holders thereof.

**4.10.** *Treatment of Classes 10(a)-(l): Section 510(b) Claims.*

**4.10.1.** *Impairment and Voting.* Classes 10(a)-(l) are Impaired by the Plan. Each Holder of a Section 510(b) claim is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

**4.10.2.** *Treatment.* On the Effective Date, all Section 510(b) Claims shall be cancelled and discharged without any distribution.

## V.
## PROVISIONS REGARDING VOTING, EFFECT OF REJECTION BY IMPAIRED CLASSES, AND CONSEQUENCES OF NON-CONFIRMABILITY

**5.1.** *Voting Rights.* Each Holder of an Allowed Claim as of the Voting Deadline in an Impaired Class of Claims or Interests that is not deemed to have rejected the Plan, and that held such Claim or Interest as of the Record Date, shall be entitled to vote separately to accept or reject the Plan as provided in the order entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**5.2.     *Acceptance Requirements.***  An Impaired Class of Claims shall have accepted the
Plan if votes in favor of the Plan have been cast by at least two-thirds in amount and more than one-half
in number of the Allowed Claims in such Class that have voted on the Plan.  An Impaired Class of
Interests shall have accepted the Plan if votes in favor of the Plan have been cast by at least two-thirds in
amount of the Interests in such Class that have voted on the Plan.

**5.3.     *Cramdown.***  If all applicable requirements for Confirmation of the Plan are met
as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8) thereof, the
Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section
1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section
1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect
to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**5.4.     *Tabulation of the Votes.***  The Debtors shall tabulate all votes on a non-
consolidated basis by Class.  If no Impaired Classes accept the Plan, the Debtors may modify the Plan to
appropriately address the rights of the Holders of Allowed Claims.

**5.5.     *Non-Confirmability.***  If the Plan has not been accepted by the requisite
majorities and the Debtors determine that the Plan cannot be confirmed under section 1129(b) of the
Bankruptcy Code, or if the Bankruptcy Court, upon consideration, declines to approve Confirmation of
the Plan, the Debtors may in their sole discretion seek to either (i) propose a new plan or plans of
reorganization, (ii) seek to amend the current Plan to satisfy all objections, if any, or (iii) seek to convert
or dismiss the Chapter 11 Cases.

## VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1.     *Assumption and Rejection of Contracts and Unexpired Leases.***  Except as
otherwise provided herein or pursuant to the Confirmation Order, all Executory Contracts and Unexpired
Leases that exist between the Debtors and any person, including, but not limited to, all Intercompany
Contracts, shall be assumed pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date,
except for any such contract or lease (i) that has been assumed or rejected, or renegotiated and either
assumed or rejected on renegotiated terms, pursuant to an order of the Bankruptcy Court entered prior to
the Effective Date, (ii) that has been entered into by the Debtors during the pendency of the Chapter 11
Cases in the ordinary course of business or pursuant to an order of the Bankruptcy Court, (iii) that is the
subject of a motion to reject, or a motion to approve renegotiated terms and to assume or reject on such
renegotiated terms, that has been filed and served prior to the Effective Date, or (iv) that is identified on
the Rejected Executory Contract and Unexpired Lease List; *provided, however,* that the applicable
Debtors shall assume the Collective Bargaining Agreements on the Effective Date.  Entry of the
Confirmation Order shall constitute approval, pursuant to section 365(a) of the Bankruptcy Code, of the
assumption of Executory Contracts and Unexpired Leases provided for herein.  Each Executory Contract
and Unexpired Lease assumed pursuant to this Section 6.1 or by any order of the Bankruptcy Court,
which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully
enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified
by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its
assumption under applicable federal law.  All agreements that are rejected pursuant to the Rejected
Executory Contract and Unexpired Lease List shall be rejected effective as of the date specified therein.

**6.2.     *Vacation/Personal Time Off Programs and Agreements.***  Notwithstanding
anything in the Plan to the contrary, the applicable Debtors shall assume and adopt that certain BMHC-
BMC West Vacation Policy 2009, which was in effect as of the Petition Date (the "Vacation Policy") and

shall perform under the Vacation Policy in the ordinary course of business. All other agreements, plans or policies relating to vacation or personal time off, including agreements, plans or policies of Subsidiary Debtors that have been in effect from time to time and any contractual commitments or accepted offers of employment that contain more favorable vacation or personal time off terms than the Vacation Policy, shall be rejected effective as of the Confirmation Date.

**6.3.** *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, including with respect to rejected vacation and/or paid time off programs or agreements, must be filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Section 4.6 or 4.8 of the Plan, whichever may be applicable.

**6.4.** *Cure of Defaults.* Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (i) the Cure Claim, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the payments required by section 365(b)(1) of the Bankruptcy Code in respect of Cure Claims shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. At least 20 days prior to the Confirmation Hearing, the Debtors shall provide for notices of proposed assumption and proposed Cure Claims to be sent to applicable third parties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Claim must be filed and served in accordance with, and otherwise comply with, the provisions of the Disclosure Statement Approval Order related to assumption of Executory Contracts and Unexpired Leases. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim will be deemed to have assented to such assumption and Cure Claim. If an objection to a proposed Cure Claim is sustained by the Bankruptcy Court, the Reorganized Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

**6.5.** *Contracts and Leases Entered into after the Petition Date.* Contracts and leases entered into during the Postpetition Period by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any

assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**6.6.** *Modifications, Amendments, Supplements, Restatements, or Other Agreements.* Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to any prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**6.7.** *Reservation of Rights.* Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## VII.
## MEANS OF IMPLEMENTATION OF THE PLAN

**7.1.** *General Settlement of Claims.* As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. Subject to Article VIII, all Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

**7.2.** *Sources of Consideration for Plan Distributions.*

**7.2.1.** *The Exit Credit Facilities.* On the Effective Date, the Reorganized Debtors shall enter into the Exit Credit Facilities consisting of the Exit Revolver and the Exit Term Loan. Confirmation shall be deemed approval of the Exit Revolver and the Exit Term Loan (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith) and authorization for the Reorganized Debtors to enter into and execute the (i) Exit Revolver documents, subject to such modifications as the Reorganized Debtors and the Exit Revolver Lenders may deem to be reasonably necessary to consummate such Exit Revolver; and (ii) the Exit Term Loan documents, subject to such modifications as the Reorganized Debtors and the Exit Term Loan Lenders may deem to be reasonably necessary to consummate such Exit Term Loan. Proceeds from the Exit Credit Facilities, together with other cash available to the Debtors and Reorganized Debtors, shall be used by the Reorganized Debtors to (i) pay in full in Cash all non-contingent obligations under the DIP Facility, (ii) fund exit costs, including, without limitation, the funding of (a) the Cash Claims Reserve, (b) the Allowed Professional Compensation Claims, and (c) the Unsecured Cash Fund, and (iii) fund general working capital requirements of the

Reorganized Debtors. Additionally, the Exit Revolver may be used for the issuance of letters of credit and the replacement of the then outstanding letters of credit issued under the DIP Facility.

**7.2.2.** *The Term Loan Credit Agreement.* On the Effective Date, the Reorganized Debtors shall enter into the Term Loan Credit Agreement. Confirmation shall be deemed approval of the Term Loan Credit Agreement (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith) and authorization for the Reorganized Debtors to enter into and execute the Term Loan Credit Agreement documents, subject to such modifications as the Reorganized Debtors and the Term Loan Lenders may deem to be reasonably necessary to consummate such Term Loan Credit Agreement. The Term Notes shall be issued to the Holders of Allowed Funded Lender Claims and L/C Lender Claims as provided in Sections 4.2 and 4.3 of the Plan. Holders of the Term Notes shall be entitled to receive, among other things, an amount equal to 100% of the Excess Cash Flow, determined on an annual basis based upon delivery of audited financial statements by Reorganized BMHC.

**7.2.3.** *Issuance of Reorganized BMHC Equity Interests.*

7.2.3.1. The issuance of the Reorganized BMHC Equity Interests, including Reorganized BMHC Equity Interests issuable in respect of the L/C Lender Equity Reserve and for options, or other equity awards, if any, in respect of the Long Term Incentive Plan, by Reorganized BMHC is authorized without the need for any further corporate action or without any further action by the Holders of Claims or Interests. An unlimited number of common shares shall be authorized under the New Certificate of Incorporation of Reorganized BMHC. The Reorganized BMHC Equity Interests, less reserves for the L/C Lender Equity Reserve and for options, or other equity awards, if any, in respect of the Long Term Incentive Plan, will be issued (i) to Holders of Allowed Funded Lender Claims on the Effective Date and (ii) if applicable and as and to the extent provided in Section 4.3 of the Plan, to Holders of Allowed L/C Lender Claims on the Effective Date and from time to time thereafter.

7.2.3.2. All of the shares of Reorganized BMHC Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VIII hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person receiving such distributions or issuance.

7.2.3.3. The Reorganized BMHC Equity Interest Effective Date Issuance shall be subject to adjustment in the reasonable discretion of Reorganized BMHC to effectuate the terms of the Plan. Shares of Reorganized BMHC Equity Interests issuable to Holders of Allowed L/C Lender Claims from time to time after the Effective Date pursuant to Section 4.3.2.2 shall be subject to adjustment from time to time for any stock splits, stock dividends, reverse stock splits, reclassifications and the like occurring after the Effective Date in respect of the Reorganized BMHC Equity Interests.

7.2.3.4. Upon the Effective Date, in the event that Reorganized BMHC determines that a Shareholder Agreement is advisable, then Reorganized BMHC shall enter into such agreement with each Person that is to be a counter-party thereto and such agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms.

DB02:8792766.1                                        068301.1001

**7.2.4.**  *Avoidance Actions.*  Avoidance Actions are hereby expressly preserved and shall vest in the applicable Reorganized Debtor on the Effective Date.

**7.2.5.**  *Unsecured Cash Fund.*  On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtors shall fund the Unsecured Cash Fund (other than with respect to the Life Insurance Policies Residual) into the Unsecured Cash Distribution Account.

**7.2.6**  *Life Insurance Policies Residual.*  As soon as practicable after the Effective Date, the Debtors shall use commercially reasonable efforts to liquidate the Life Insurance Policies for Cash.  To the extent that a Class of Holders of General Unsecured Claims has voted to accept the Plan, the Debtors shall increase the Unsecured Cash Fund by an amount equal to the portion of the Life Insurance Policies Residual applicable to such Class and shall fund such amount into the Unsecured Cash Distribution Account for the benefit of such Holders.

**7.3.**  *Rule 2004 Examinations.*  The power of the Debtors to conduct examinations pursuant to Bankruptcy Rule 2004 shall be expressly preserved following the Effective Date.

**7.4.**  *Continued Corporate Existence.*  Except as provided herein, each Debtor will continue to exist on or after the Effective Date as a separate corporate entity, with all the powers of a corporation or limited liability company, as the case may be, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under applicable law.

**7.5.**  *Revesting of Assets.*  Except as expressly provided herein, the Assets of each Debtor's Estate shall revest with the respective Reorganized Debtor on the Effective Date.  The Bankruptcy Court shall retain jurisdiction to determine disputes as to property interests created or vested by the Plan.  From and after the Effective Date, the Reorganized Debtors may operate their businesses, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, except as provided herein.  As of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims and Interests, except as, and to the extent, provided in the Plan.

**7.6.**  *Merger.*  On the Effective Date, the Reorganized Debtors may (i) effectuate the transactions described in the Restructuring Transactions Memorandum, if any (ii) merge, dissolve, transfer assets, or otherwise consolidate any of the Debtors in furtherance of the Plan or (iii) engage in any other transaction in furtherance of the Plan.  Any such transaction may be effected on or subsequent to the Effective Date without any further action by Holders of Interests or the directors of any of the Debtors.

**7.7.**  *Cancellation of Securities and Agreements.*  On the Effective Date, except as otherwise specifically provided for in the Plan: (i) the obligations of the Debtors under the Prepetition Credit Agreement, DIP Facility, and any other Certificate, Interest, Equity Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim, Interest, or Equity Security (except such Certificates, notes, or other instruments or document evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements,

Certificates, notes, or other instruments evidencing indebtedness or obligations of or ownership interest in the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; *provided, however*, that notwithstanding Confirmation or consummation, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors; and *provided, further, however*, that the foregoing shall not effect the cancellation of the Reorganized BMHC Equity Interests issued pursuant to the Plan in Reorganized BMHC, nor any other shares held by one Debtor in another Debtor, except in connection with any Restructuring Transactions implemented by the Reorganized Debtors.

**7.8.** *Reorganized BMHC.* On the Effective Date, the New Board of Reorganized BMHC shall be established and Reorganized BMHC shall adopt its New Bylaws. As soon after the Effective Date as reasonably practicable, Reorganized BMHC shall adopt the Long Term Incentive Plan. Reorganized BMHC shall be authorized to adopt any other agreements, documents, and instruments and to take any other action contemplated by the Plan as necessary and desirable to consummate the Plan.

**7.9.** *Post Effective Date Management.* Except as expressly provided in the Plan and the Debtors' certificate of incorporation and the New Certificates of Incorporation, which may be amended from time to time, the operation, management, and control of the Reorganized Debtors shall be the general responsibility of its board of directors or managers and senior officers, which shall thereafter have the responsibility for the management, control, and operation of the Reorganized Debtors. Entry of the Confirmation Order shall ratify and approve all actions taken by each of the Debtors from the Petition Date through and until the Effective Date.

**7.10.** *Directors and Officers of the Reorganized Debtors.* On and after the Effective Date, the business and affairs of the Reorganized Debtors will be managed by the New Boards and the officers, directors or managers identified in the Plan Supplement. Biographical information regarding these proposed officers, directors, and managers will be set forth in the Plan Supplement. A schedule of the annual compensation to be paid to persons serving as executives, officers, and directors or managers as of the Effective Date will be set forth in the Plan Supplement.

**7.11.** *New Certificates of Incorporation and New Bylaws of the Reorganized Debtors.* As of the Effective Date, the New Certificates of Incorporation and the New Bylaws shall be substantially in the forms included in the Plan Supplement, with such changes as may be necessary to conform to the applicable laws of the state of incorporation. The New Certificates of Incorporation and New Bylaws, among other things, shall prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may amend and restate their New Certificates of Incorporation and New Bylaws, as permitted under applicable state laws, subject to the terms and conditions of such documents.

**7.12.** *New Employment, Retirement, Indemnification, and Other Related Agreements.* As of the Effective Date, the Reorganized Debtors shall have the authority, as determined by its governing Persons, to: (i) maintain, amend, or revise existing employment, retirement, welfare, incentive, severance, indemnification, and other agreements with its active and retired directors or managers, officers, and employees, subject to the terms and conditions of any such agreement; and (ii) enter into new employment, retirement, welfare, incentive, severance, indemnification, and other agreements for active and retired employees.

**7.13.** *Effectuating Documents; Further Transactions.* On and after the Effective Date, Reorganized BMHC and the other Reorganized Debtors, and the officers and members of the New Boards, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of Reorganized BMHC and the other Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**7.14.** *Corporate Action.* Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (i) the adoption or assumption, as applicable, of the agreements with existing management; (ii) the selection of the directors and officers for the Reorganized Debtors; (iii) the distribution of the Reorganized BMHC Equity Interests in accordance with the Plan; (iv) the execution and entry into the Exit Revolver, the Exit Term Loan and the Term Loan Credit Agreement; (v) the establishment of the Long Term Incentive Plan and the issuance of any Reorganized BMHC Equity Interests thereunder; and (vi) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the Revolving Credit Agreement, the Exit Term Loan and the Term Loan Credit Agreement, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated herein shall be effective notwithstanding any requirements under non-bankruptcy law. The issuance of the Reorganized BMHC Equity Interests shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of securities by an officer or director (or a director deputized for purposes thereof) as of the new Effective Date.

**7.15.** *Section 1146 Exemption.* Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**7.16.** *Preservation of Causes of Action.* In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. The Debtors or Reorganized

Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan. Unless any Causes of Action against any Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation.

The Reorganized Debtors reserve and shall retain the Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Person shall vest in the Reorganized Debtors, as the case may be. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**7.17.** *Insurance Policies and Agreements.* Notwithstanding anything in the Plan to the contrary (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release), Insurance Policies and Agreements are treated as Executory Contracts under the Plan; and all references to Executory Contracts shall include the Insurance Policies and Agreements. On the Effective Date, the applicable Debtors that are parties to such Insurance Policies and Agreements and the applicable Reorganized Debtors shall be deemed to have assumed in accordance with section 365 of the Bankruptcy Code all such Insurance Policies and Agreements, and the applicable Reorganized Debtors shall remain liable for all obligations under the Insurance Policies and Agreements, whether now existing or hereafter arising, and shall pay such obligations in the ordinary course of business. The applicable insurers shall be deemed to have consented to such assumption. Nothing in the Plan: (a) precludes or limits the rights of insurers to contest and/or litigate with any party, including, without limitation, the Debtors, the existence, primacy and/or scope of available coverage under any alleged applicable policy; (b) permits any holder of an Insured Claim to recover the same amounts from an insurer and any other party including, but not limited to, the Debtors (or after the Effective Date, the Reorganized Debtors); (c) alters an insurer's rights and obligations under its Insurance Policies and Agreements or modifies the coverage provided thereunder; (d) alters the rights and obligations of the Debtors (or after the Effective Date, the Reorganized Debtors) or the insurers under the Insurance Policies and Agreements including, without limitation, any duty of the Debtors' to defend, at their own expense, against claims asserted under the Insurance Policies and Agreements; (e) discharges, releases or relieves the Debtors or Reorganized Debtors, after the Effective Date, from any debt or other liability under the Insurance Policies and Agreements; or (f) limits, diminishes, or otherwise alters or impairs the Debtors', Reorganized Debtors' and/or an insurer's defenses, claims, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Insurance Policies and Agreements. If an insurer objects to the proposed assumption of its Insurance Policies and Agreements, or any of them, or the proposed Cure Claim related thereto, the insurer must comply with the objection procedure specified in section 6.4 of the Plan and the Disclosure Statement Approval Order.

**7.18.** *Nonoccurrence of Effective Date.* In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

DB02:8792766.1 068301.1001

**7.19.  *Collective Bargaining Agreements.*** On the Effective Date, the applicable Debtors shall assume all of their Collective Bargaining Agreements.

# VIII.
## METHOD OF DISTRIBUTIONS UNDER THE PLAN AND CLAIMS RECONCILIATION

**8.1.  *Disbursing Agent.*** The Debtors shall act as the Disbursing Agent under the Plan with respect to distributions of Cash made on the Effective Date and the Reorganized Debtors shall act as the Disbursing Agent after the Effective Date.

**8.2.  *Distribution Record Date.*** For purposes of the Plan, as of the close of business on the Distribution Record Date, the records of ownership of Claims against the Debtors (including the claims register in the Chapter 11 Cases) will be closed. For purposes of the Plan, the Debtors, the Estates, and the Reorganized Debtors shall have no obligation to recognize the transfer of any of the Claims against the Debtors occurring after the Distribution Record Date, and shall be entitled for all purposes relating to the Plan to recognize and deal only with those Holders of record as of the close of business on the Distribution Record Date.

**8.3.  *Cash Payments.*** Any Cash payments made pursuant to the Plan will be made in U.S. dollars. Cash payments made pursuant to the Plan in the form of a check shall be null and void if not cashed within 180 days of the date of issuance thereof.

**8.4.  *Delivery of Distributions.*** If the Distribution to any Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of such Holder. Undeliverable Distributions shall be held by the Disbursing Agent, subject to Section 8.7.

**8.5.  *Minimum Cash Distributions.*** No Cash payment less than fifty dollars shall be made to any Holder of a Claim unless a request therefor is made in writing to the Debtors.

**8.6.  *Withholding Taxes.***

**8.6.1.** The Disbursing Agent shall comply with all withholding, reporting, certification, and information requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification, and information requirements.

**8.6.2.** Persons entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as the Disbursing Agent may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable the Disbursing Agent to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

**8.6.3.** Any Person that does not provide the Disbursing Agent with requisite information after the Disbursing Agent has made at least three attempts (by written notice or request for such information, including on the ballots in these Chapter 11 Cases) to obtain such information, may be deemed to have forfeited such Person's right to such distributions, which shall be treated as unclaimed property under Section 8.7.

**8.7.** *Unclaimed Property.* Any Person that fails to claim any Distribution to be distributed hereunder within one year from the initial date for such distribution shall forfeit all rights to any such distributions under the Plan. Upon such forfeiture of Cash or other property, such Cash or property shall be the property of the applicable Disbursing Agent. Nothing herein shall require the Disbursing Agent to attempt to locate or notify any Person with respect to any forfeited property. Persons that fail to claim Cash or other property to be distributed under the Plan within such one-year period shall forfeit their rights thereto and shall have no claim whatsoever with respect thereto against the Debtors, their Estates, the Disbursing Agent, or any Holder of an Allowed Claim to which distributions are made.

**8.8.** *Reserve for Disputed General Unsecured Claims* On the Effective Date, the Disbursing Agent shall establish, and maintain thereafter, a reserve from the Unsecured Cash Fund for the benefit of Holders of Disputed General Unsecured Claims. Such reserve shall consist of an amount of Cash equal to the amount that would be distributable to all Holders of such Disputed General Unsecured Claims, in respect of all distributions made to that date, if those Claims were Allowed in the Maximum Amount. In the event any such Disputed General Unsecured Claim becomes an Allowed Claim, the amount of such Allowed Claim shall never exceed the Maximum Amount of such Disputed General Unsecured Claim, and the Disbursing Agent shall distribute to the Holder of such Allowed Claim from the reserve the aggregate amount of Cash that such Holder would have received as of the date of such distribution in respect of such Allowed Claim had such Claim been an Allowed Claim as of the Effective Date. If a Disputed General Unsecured Claim is disallowed, the Cash reserved for such claim shall be distributed, on the next anniversary of the Effective Date (or as soon as practicable thereafter), to Holders of Allowed Claims in the applicable class.

**8.9** *Disputed Claims.* If the Debtors or any other party in interest disputes any Claim against the Debtors, such dispute shall be determined, resolved, or adjudicated, as the case may be, under applicable law by the Bankruptcy Court. Among other things, (i) the Debtors (on or before the Effective Date), and (ii) the Reorganized Debtors (after the Effective Date) may each elect, at their respective sole option, to object to or seek estimation under section 502 of the Bankruptcy Code with respect to any Proof of Claim filed by or on behalf of a Holder of a Claim against the Debtors.

**8.10.** *Objections to Claims.* Unless a later or different time is set by Final Order or otherwise established by other provisions of the Plan, all objections to Claims must be filed by the Claims Objection Bar Date; *provided, however,* that no such objection may be filed against any Claim after the Bankruptcy Court has determined by entry of a Final Order that such Claim is an Allowed Claim. The failure by any party in interest, including the Debtors and the Committee, to object to any Claim, whether or not unpaid, for purposes of voting shall not be deemed a waiver of such party's or the Disbursing Agent's rights to object to, or re-examine, any such Claim in whole or in part. After the Effective Date, no party in interest shall have the right to object to Claims against the Debtors or their Estates other than the Reorganized Debtors.

**8.11.** *Compromises and Settlements.* From and after the Effective Date, and without any further approval by the Bankruptcy Court, the Reorganized Debtors may compromise and settle Claims.

**8.12.** *Reservation of Debtors' Rights.* Prior to the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or other claims they may have against other Persons.

**8.13.** *No Distributions Pending Allowance.* If a Claim or any portion of a Claim is disputed, no payment or Distribution will be made on account of the disputed portion of such Claim (or

the entire Claim, if the entire Claim is disputed), unless such Disputed Claim or portion thereof becomes an Allowed Claim.

**8.14.** *No Postpetition Interest on Claims.* Unless otherwise specifically provided for in the Plan, the Confirmation Order, or other Final Order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim.

**8.15.** *Claims Paid or Payable by Third Parties.*

**8.15.1.** *Claims Paid by Third Parties.* The Debtors or the Disbursing Agent, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Disbursing Agent. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Disbursing Agent on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Disbursing Agent, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the applicable Disbursing Agent annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

**8.15.2.** *Claims Payable by Third Parties.* Except with respect to payment of Insured Claims within the applicable deductible or self-insured retention under Insurance Policies and Agreements that are secured by Prepetition Letters of Credit, no Distributions under the Plan shall be made on account of an Insured Claim unless and until the Holder of such an Insured Claim has received proceeds, if any, of any applicable Insurance Policies and Agreements. To the extent that one or more of the Debtors' insurers agrees to settle or pay, in full or in part, an Insured Claim, then immediately upon such insurers' payment, the applicable portion of the Claim may be expunged without a Claims objection having to be Filed and without further notice to or action, order, or approval of the Bankruptcy Court.

**8.15.3.** *Applicability of Insurance Policies and Agreements.* Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims that are covered by the Debtors' Insurance Policies and Agreements shall be in accordance with the provisions of any applicable Insurance Policy and Agreement. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Person may hold against any other Person, including insurers under any Insurance Policies and Agreements, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights, claims or defenses, including coverage defenses, held by such insurers.

## IX.
## EFFECT OF CONFIRMATION OF PLAN

**9.1.** *Discharge.*

**9.1.1.** *Discharge of Claims Against the Debtors and the Reorganized Debtors.* Except as otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation of the Plan shall, as of the Effective Date: (i) discharge the Debtors, the Reorganized Debtors or any of its or

their Assets from all Claims, demands, liabilities, other debts and Interests that arose on or before the Effective Date, including all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code or (c) the Holder of a Claim based on such debt has accepted the Plan; and (ii) preclude all Persons from asserting against the Debtors, the Reorganized Debtors, or any of its or their Assets, any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any judgment obtained against any of the Debtors at any time, to the extent that such judgment relates to a discharged Claim or cancelled Interest.

### 9.1.2. *Injunction Related to the Discharge.* Except as otherwise provided in

the Plan or the Confirmation Order, all entities that have held, currently hold, or may hold Claims or other debts or liabilities against the Debtors, or an Interest or other right of an Equity Security Holder in any or all of the Debtors, that are discharged pursuant to the terms of the Plan, are permanently enjoined, on and after the Effective Date, from taking any of the following actions on account of any such Claims, debts, liabilities or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt, liability, Interest, or right, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or any of its or their Assets on account of any such Claim, debt, liability, Interest, or right; (iii) creating, perfecting, or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtors, or any of its or their Assets on account of any such Claim, debt, liability, Interest or right; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, the Reorganized Debtors, or any of its or their Assets on account of any such Claim, debt, liability, Interest, or right; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Such injunction shall extend to any successor of the Debtors, the Reorganized Debtors, or any of its or their Assets. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

### 9.2. *Releases.*

#### 9.2.1. *Releases by the Debtors.* As of the Effective Date, for good and

valuable consideration, the adequacy of which is hereby confirmed, the Debtors in their individual capacity and as debtors in possession will be deemed to release and forever waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between and Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have

been asserted by or on behalf of the Debtors or their Estates at any time up to immediately prior to the Effective Date against the Released Parties, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

9.2.2. *Certain Waivers.* Although the Debtors do not believe that California law is applicable to the Plan, nevertheless, in an abundance of caution, each Debtor hereby understands and waives the effect of Section 1542 of the California Civil Code to the extent that such section is applicable to the Debtors. Section 1542 of the California Civil Code provides:

§1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

EACH DEBTOR AGREES TO ASSUME THE RISK OF ANY AND ALL UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS WHICH ARE RELEASED BY THE PLAN AND EACH DEBTOR HEREBY WAIVES AND RELEASES ALL RIGHTS AND BENEFITS WHICH IT MIGHT OTHERWISE HAVE UNDER THE AFOREMENTIONED SECTION 1542 OF THE CALIFORNIA CIVIL CODE WITH REGARD TO THE RELEASE OF SUCH UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS. TO THE EXTENT (IF ANY) ANY OTHER LAWS SIMILAR TO SECTION 1542 OF THE CALIFORNIA CIVIL CODE MAY BE APPLICABLE, EACH DEBTOR WAIVES AND RELEASES ANY BENEFIT, RIGHT OR DEFENSE WHICH IT MIGHT OTHERWISE HAVE UNDER ANY SUCH LAW WITH REGARD TO THE RELEASE OF UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS.

9.2.3. *Releases by Holders of Claims and Interests.* Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date of the Plan, each Holder of a Claim or an Interest, shall be deemed to have released and forever waived and discharged all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiations, formulation, or preparation of the Plan, the related Disclosure Statement, the related Plan Supplement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Debtors or their Estates at any time up to

immediately prior to the Effective Date against the Released Parties, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations (except Cure Claims that have not been filed timely) of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any obligation under any assumed contract or lease or any Prepetition Letters of Credit.

**9.2.4.** *Exculpation.* On and after the Effective Date, none of the ᐧ Exculpated Parties shall have or incur any liability for, and each Exculpated Party is hereby released from, any claim, cause of action, or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, for any act or omission that occurred during and in connection with the Chapter 11 Cases or in connection with the preparation and filing of the Chapter 11 Cases, the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, the Debtors, the Estates, the Committee, WFB, the Prepetition Lenders, the DIP Lenders, and their respective officers, directors, employees, members, attorneys, crisis managers, financial advisors, and professionals, shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of the Plan, the Disclosure Statement, or the Confirmation Order shall be deemed to act upon or release any claims, Causes of Action or liabilities that the Debtors, the Estates, or any party in interest may have against or to any Person for any act, omission, or failure to act that occurred prior to the Petition Date other than in connection with the preparation and filing of the Chapter 11 Cases, nor shall any provision of the Plan or the Confirmation Order be deemed to act to release any Avoidance Actions.

**9.2.5.** *Injunction Related to Releases.* To the fullest extent allowed by law, and except as otherwise provided in the Plan or the Confirmation Order, all Persons that have held, currently hold, or may hold claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities that are released or exculpated pursuant to Section 9.2.1, 9.2.2, 9.2.3, and 9.2.4 are permanently enjoined, on and after the Effective Date, from taking any of the following actions on account of any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities: (i) commencing or continuing in any manner any action or other proceeding of any kind against a Released Party or Exculpated Party with respect to any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any Released Party or any Exculpated Party or any of its or their Assets on account of any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities; (iii) creating, perfecting, or enforcing any Lien or encumbrance against any Released Party or any Exculpated Party or any of its or their assets on account of any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to any Released Party or any Exculpated Party or any of its or their Assets on account of any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions

of the Plan or the Confirmation Order. Such injunction shall extend to any successor of any Released Party or any Exculpated Party or any of its or their assets. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

**9.3.** *No Successor Liability.* Except as otherwise expressly provided herein, none of the Released Parties shall be determined to be successors to any of the Debtors or to any Person for which the Debtors may be held legally responsible, by reason of any theory of law or equity, and none can be responsible for any successor or transferee liability of any kind or character. The Released Parties do not agree to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors or the Reorganized Debtors, whether arising before, on, or after the Confirmation Date, except as otherwise expressly provided in the Plan.

**9.4.** *Release of Liens.* Except as otherwise expressly provided in the Plan or in any contract, instrument, indenture, or other agreement or document expressly incorporated by reference in the Plan, the Confirmation Order will release any and all prepetition Liens against the Debtors, the Reorganized Debtors or any of their Assets.

**9.5.** *Term of Injunctions.* All injunctions or stays provided in, or in connection with, the Chapter 11 Cases, whether pursuant to section 105, section 362, or any other provision of the Bankruptcy Code, other applicable law or court order, in effect immediately prior to Confirmation will remain in full force and effect until such injunctions or stays become effective and shall remain in full force and effect thereafter if so provided in the Plan, the Confirmation Order or by their own terms. In addition, on and after Confirmation Date, the Debtors may seek further orders to preserve the status quo during the time between the Confirmation Date and the Effective Date.

**9.6.** *Binding Effect.* The Plan shall be binding upon, and inure to the benefit of, the Debtors and all Holders of Claims and Interests, and their respective successors and assigns, whether or not the Claims and Interests of such Holders are Impaired under the Plan and whether or not such Holders have accepted the Plan.

**9.7.** *Dissolution of the Committee.* The Committee shall be dissolved on the Effective Date and shall not continue to exist thereafter except for the limited purposes of filing any remaining fee applications, and the Professionals retained by the Committee shall be entitled to compensation for services performed and reimbursement of expenses incurred in connection therewith. Upon dissolution of the Committee, the members of the Committee shall be released and discharged of and from all duties, responsibilities and obligations related to and arising from and in connection with the Debtors' Chapter 11 Cases.

**9.8.** *Post-Confirmation Date Retention of Professionals.* After the Confirmation Date, any requirement that Professionals employed by the Debtors comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtors will be authorized to employ and compensate Professionals in the ordinary course of business and without the need for Bankruptcy Court approval.

## X.
## EFFECTIVENESS OF THE PLAN

**10.1.** *Conditions Precedent.* The Plan shall not become effective unless and until the following conditions have been satisfied:

### 10.1.1. *Conditions to Confirmation.*

10.1.1.1.     ***Disclosure Statement.***     The Bankruptcy Court shall have approved a Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

10.1.1.2.     ***Plan Supplement.***     The Plan Documents to be provided in the Plan Supplement are in a form that is reasonably satisfactory to the Debtors, the Exit Revolver Lenders and the Exit Term Loan Lenders.

10.1.1.3.     ***Confirmation Order.***     The Confirmation Order must be in form and substance reasonably acceptable to the Debtors, the Exit Revolver Lenders and the Exit Term Loan Lenders and must provide for the confirmation of the Plan with respect to each Debtor.

### 10.1.2. **Conditions to Effective Date.**

10.1.2.1.     ***Confirmation Order.***     At least 10 days shall have passed after the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors, the Exit Revolver Lenders and the Exit Term Loan Lenders.

10.1.2.2.     ***No Stay of Confirmation.***     There shall not be in force any order, decree, or ruling of any court or governmental body having jurisdiction, restraining, enjoining, or staying the consummation of, or rendering illegal the transactions contemplated by, the Plan.

10.1.2.3.     ***Receipt of Required Governmental Authorization.***     All governmental authorizations, consents, and regulatory approvals (if any) necessary to effectuate the Plan shall have been obtained.

10.1.2.4.     ***Exit Revolver.***     The documents evidencing the Exit Revolver shall be in form and substance reasonably acceptable to the Debtors and the Exit Revolving Lenders, shall have been executed and delivered by the respective parties thereto, and all conditions precedent to the effectiveness of such document shall have been satisfied or waived.

10.1.2.5.     ***Term Loan Credit Agreement.***     The documents evidencing the Term Loan Credit Agreement shall be in form and substance reasonably acceptable to the Debtors and the Exit Term Loan Lenders, shall have been executed and delivered by the respective parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived.

10.1.2.6.     ***Plan Supplement.***     All documents to be contained in the Plan Supplement shall be completed and in final form and, to the extent necessary, shall have been executed and delivered by the respective parties thereto.

10.1.2.7.     ***Required Transactions.***     All transactions required by the Plan have been completed to the reasonable satisfaction of the Debtors, the Exit Revolver Lenders and the Exit Term Loan Lenders.

DB02:8792766.1                                        068301.1001

10.1.2.8.　　**IRS Tax Refund Claim.**　The Internal Revenue Service's proofs of claim filed in the Chapter 11 Cases with respect to the tax refund received in 2009 shall either be withdrawn or disallowed.

10.1.2.9　　**Restructuring Transactions.**　At the discretion of the Debtors and with the consent of the Exit Revolver Lenders and the Exit Term Loan Lenders (which consent shall not be unreasonably withheld), the Restructuring Transactions described in the Restructuring Transactions Memorandum have been completed to the reasonable satisfaction of the Debtors, the Exit Revolving Lenders and the Exit Term Loan Lenders.

**10.1.3.　Waiver.**　Any of the conditions set forth in Sections 10.1.1 and 10.1.2 hereof may be waived by the party benefiting from such condition to the extent that such waiver does not affect the distributions hereunder.

**10.2.　Effect of Failure of Conditions.**　In the event that the conditions specified in Section 10.1. have not been satisfied or waived on or before 120 days after the Confirmation Date, then the Debtors may seek an order from the Bankruptcy Court vacating the Confirmation Order. Such request shall be served upon counsel for the administrative agent under the Prepetition Credit Agreement, the administrative agent under the DIP Facility, the proposed administrative agent under the Revolving Credit Agreement, the Committee, and the U.S. Trustee. If the Confirmation Order is vacated, (i) the Plan shall be null and void in all respects; (ii) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; and (iii) the time within which the Debtors may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of 60 days after the date the Confirmation Order is vacated.

# XI.
# RETENTION OF JURISDICTION

**11.1.　Bankruptcy Court.**　Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

**11.1.1.**　allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim or Priority Tax Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

**11.1.2.**　hear and rule upon all Causes of Action retained by the Debtors and commenced and/or pursued by the Debtors or the Reorganized Debtors;

**11.1.3.**　resolve any matters related to the rejection, assumption, or assumption and assignment of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

**11.1.4.**　ensure that Distributions on account of Allowed Claims are accomplished pursuant to the provisions of the Plan;

DB02:8792766.1
068301.1001

**11.1.5.** decide or resolve any motions, adversary proceedings, contested, or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

**11.1.6.** enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

**11.1.7.** resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any Person's rights arising from or obligations incurred in connection with the Plan or such documents;

**11.1.8.** approve any modification of the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

**11.1.9.** hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 363, 503(b), 1103, and 1129(a)(9) of the Bankruptcy Code, which shall be payable by the Debtors, or the Reorganized Debtors, as applicable, only upon allowance thereof pursuant to the order of the Bankruptcy Court; *provided, however*, that the fees and expenses of the Debtors incurred after the Confirmation Date, including attorneys' fees, may be paid by the Reorganized Debtors in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

**11.1.10.** issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation of the Plan, implementation, or enforcement of the Plan or the Confirmation Order;

**11.1.11.** hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

**11.1.12.** enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or if Distributions pursuant to the Plan are enjoined or stayed;

**11.1.13.** determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement, or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

**11.1.14.** enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

**11.1.15.** hear and determine all matters related to (i) the property of the Debtors and the Estates from and after the Confirmation Date and (ii) the activities of the Debtors or the Reorganized Debtors; and

**11.1.16.** hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## XII.
## MISCELLANEOUS PROVISIONS

**12.1.** *Plan Supplement.* No later than 10 days prior to the Voting Deadline, the Debtors shall File with the Bankruptcy Court the Plan Supplement, which shall contain such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtors' counsel.

**12.2.** *Exemption for Registration Requirements.* Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance and Distribution of any securities contemplated by the Plan shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution or sale of securities. In addition, any securities contemplated by the Plan will be tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code; and (ii) the restrictions, if any, on the transferability of such securities and instruments.

**12.3.** *Statutory Fees.* All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

**12.4.** *Third Party Agreements.* The Distributions to the various Classes of Claims and Interests hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. All of such rights and any agreements relating thereto shall remain in full force and effect, except as compromised and settled pursuant to the Plan. Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.

**12.5.** *Amendment or Modification of Plan.* As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before Confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Debtors may modify the Plan at any time after Confirmation and before consummation of the Plan, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

**12.6.** *Severability.* In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, the Reorganized Debtors may, at their option, (a) treat such provision as invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Interests that the provision is determined to be invalid, void or

unenforceable, in which case such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan, or (b) alter, amend, revoke, or withdraw the Plan.

**12.7.** *Revocation or Withdrawal of Plan.* The Debtors reserve the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing at any time prior to the occurrence of the Effective Date. If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (iii) nothing contained in the Plan shall (A) constitute a waiver or release of any Claims by or against, or Interests in, such Debtors or any other Person, (B) prejudice in any manner the rights of such Debtors or any other Person, or (C) constitute an admission of any sort by the Debtors or any other Person.

For the avoidance of doubt, if the Confirmation Hearing is adjourned, the Debtors reserve the right to amend, modify, revoke or withdraw the Plan and/or submit any new plan of reorganization at such times and in such manner as they consider appropriate, subject to the provisions of the Bankruptcy Code.

**12.8.** *Rules Governing Conflicts Between Documents.* In the event of a conflict between the terms or provisions of the Plan and the Plan Documents, the terms of the Plan shall control over the Plan Documents. In the event of a conflict between the terms of the Plan or the Plan Documents, on the one hand, and the terms of the Confirmation Order, on the other hand, the terms of the Confirmation Order shall control. In the event of a conflict between the information contained in the Disclosure Statement and the Plan or any other Plan Document, the Plan or other Plan Document (as the case may be) will control.

**12.9.** *Governing Law.* Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable or the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its conflicts of law principles.

**12.10.** *Notices.* Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid. If to the Debtors, any such notice shall be directed to the following at the addresses set forth below:

> Building Materials Holding Corporation
> 720 Park Boulevard
> Boise, Idaho 83712
> Attention: Paul Street
>
> -- with copies to --
>
> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue
> New York, New York 10166-0193
> Attention: Michael A. Rosenthal and Matthew K. Kelsey
>
> -- and --

Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street
17th Floor
Wilmington, Delaware 19801
Attention: Sean M. Beach and Robert F. Poppiti, Jr.

**12.11.** *Interest and Attorneys' Fees.* Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law. No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Bankruptcy Court.

**12.12.** *Binding Effect.* The Plan shall be binding upon the Debtors, the Reorganized Debtors, the Holders of all Claims and Interests, parties in interest, Persons, and Governmental Units and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**12.13.** *No Admissions.* As to contested matters, adversary proceedings and other Causes of Action or threatened Causes of Action, nothing in the Plan, the Plan Supplement, the Disclosure Statement, or other Plan Documents shall constitute or be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations. The Plan shall not be construed to be conclusive advice on the tax, securities, and other legal effects of the Plan as to Holders of Claims against, or Interests in, the Debtors or any of their subsidiaries and affiliates, as debtors and debtors in possession in the Chapter 11 Cases.

**12.14.** *Exhibits.* All Exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

*-- The remainder of this page has been intentionally left blank --*

DB02:8792766.1                                                                                                    068301.1001

The undersigned have executed this Joint Plan of Reorganization For the Debtors Under Chapter 11 of the Bankruptcy Code as of the 1st day of October, 2009.

Respectfully submitted,

Dated: Wilmington, Delaware
October 1, 2009

BUILDING MATERIALS HOLDING
CORPORATION, on behalf of itself and all the other
Debtors

By: Paul S. Street
Title: Senior Vice President,
General Counsel Chief Administrative
Officer, and Corporate Secretary

COUNSEL

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Sean M. Beach (No. 4070)
Donald J. Bowman Jr. (No. 4383)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, DE 19801
Telephone: 302.571.6600
Facsimile: 302.571.1253

---- and ----

GIBSON, DUNN & CRUTCHER LLP
Michael A. Rosenthal (admitted pro hac vice)
Matthew K. Kelsey (admitted pro hac vice)
Aaron G. York (admitted pro hac vice)
200 Park Ave, 47th Floor
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION