# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| BUILDING MATERIALS HOLDING CORPORATION, et al.,[1] | Case No. 09-12074 (KJC) |
| Debtors. | Jointly Administered |
| | Ref. Docket No. 1134 |

## ORDER CONFIRMING JOINT PLAN OF REORGANIZATION FOR THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AMENDED DECEMBER 14, 2009 (WITH TECHNICAL MODIFICATIONS)

The Joint Plan of Reorganization for the Debtors under Chapter 11 of the Bankruptcy Code Amended October 22, 2009, (as amended, modified, or supplemented, the "*Plan*") having been filed with the Bankruptcy Court (the "*Court*") (Docket No. 834, Exhibit B to Exhibit 3) by the above-captioned debtors and debtors-in-possession (the "*Debtors*"); and the Disclosure Statement with Respect to Joint Plan of Reorganization for the Debtors under Chapter 11 of the Bankruptcy Code Amended October 22, 2009, dated as of October 22, 2009 (the "*Disclosure Statement*"), having been filed with this Court (Docket No. 834, Exhibit 3); and the Disclosure Statement, and appropriate Ballots[2] for voting on the Plan, having been approved, and transmitted to Holders of Claims in Classes 2(a)-(l), Classes 3(a)-(l), Classes 6(a)-(l), and Classes 8(a)-(l) against the Debtors, pursuant to that certain Order (I) Approving the Disclosure

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are as follows: Building Materials Holding Corporation (4269), BMC West Corporation (0454), SelectBuild Construction, Inc. (1340), SelectBuild Northern California, Inc. (7579), Illinois Framing, Inc. (4451), C Construction, Inc. (8206), TWF Construction, Inc. (3334), H.N.R. Framing Systems, Inc. (4329), SelectBuild Southern California, Inc. (9378), SelectBuild Nevada, Inc. (8912), SelectBuild Arizona, LLC (0036), and SelectBuild Illinois, LLC (0792). The mailing address for the Debtors is 720 Park Boulevard, Suite 200, Boise, Idaho 83712.

[2] All capitalized terms used and not otherwise defined in this Confirmation Order shall have the meanings ascribed to them in the Plan.

Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes To Accept or Reject the Plan, Including (A) Approving the Form and Manner of Distribution of Solicitation Packages, (B) Approving the Form and Manner of Notice of the Confirmation Hearing, (C) Establishing a Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing the Deadline for Receipt of Ballots, and (F) Approving the Procedures for Vote Tabulations; (III) Establishing the Deadline and Procedures for Filing Objections to (A) Confirmation of the Plan, and (B) Proposed Cure Amounts Related to Contracts and Leases Assumed under the Plan; and (IV) Granting Related Relief, dated October 22, 2009 (Docket No. 768) (the *"Disclosure Statement Approval Order"*), as modified by that certain Order Extending By Two Days the Deadlines for Mailing Solicitation Packages, Confirmation Hearing Notices and Non-Voting Holder Notices dated October 27, 2009 (the *"Solicitation Extension Order"*); and a copy of the Plan with technical modifications having been filed on December 14, 2009 [D.I. 1134] and being attached hereto as Exhibit 1; and a redline copy of the Plan showing the modifications being attached hereto as Exhibit 2 (such plan modifications, the *"Subsequent Plan Modifications"*); and the Debtors having filed their Memorandum of Law in Support of Confirmation of Joint Plan of Reorganization for the Debtors Under Chapter 11 of the Bankruptcy Code Amended December 7, 2009 (With Technical Modifications), with this Court on December 7, 2009 (the *"Confirmation Memorandum"*); and the hearing to consider the confirmation of the Plan having been held before the Court on December 17, 2009 (the *"Confirmation Hearing"*) after due and sufficient notice was given to Holders of Claims against, and Interests in, the Debtors and other parties in interest in accordance with the Disclosure Statement Approval Order, the Solicitation Extension Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*), and the

local bankruptcy rules of this Court (the "***Local Rules***"), in each case as established by the affidavits of service, mailing, and/or publication filed with this Court prior to the Confirmation Hearing (collectively, the "***Notice Affidavits***");[3] and upon all of the proceedings held before this Court and after full consideration of: (i) each of the objections to the confirmation of the Plan filed with this Court and not subsequently withdrawn, settled, or deemed moot (the "***Objections***"); (ii) the Declaration of Jeffrey S. Stein of the Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Results of Voting with Respect to the Joint Plan of Reorganization for the Debtors under Chapter 11 of the Bankruptcy Code Amended October 22, 2009, filed on December 7, 2009 (Docket No. 1078) by Garden City Group, Inc. ("***GCG***"), the Debtors' voting and claims agent; (iii) testimony proffered or presented at the Confirmation Hearing, (iv) the declarations and/or affidavits filed with this Court; (v) all other evidence proffered or adduced at, memoranda and objections filed in connection with and arguments of counsel made at, the Confirmation Hearing; and (vi) the entire record of the Chapter 11 Cases (as defined below); and after due deliberation thereon; and good cause appearing therefor;

## IT IS HEREBY FOUND AND DETERMINED THAT:[4]

A.  Chapter 11 Petitions. On June 16, 2009 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court (the "***Chapter 11 Cases***"). The Debtors are operating their businesses and managing their

---

[3] The Notice Affidavits are located at Docket Nos. 821, 835, 836, 837, 854, 855, 856, 1005, 1006 and 1049.

[4] The findings and conclusions set forth in this Confirmation Order and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases. On June 26, 2009, the United States Trustee (the "*U.S. Trustee*") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "*Committee*").

B.     <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2) and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code.

C.     <u>Judicial Notice</u>. This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of this Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered and all evidence and arguments made, proffered, or adduced at, the hearings held before this Court during the pendency of the Chapter 11 Cases.

D.     <u>Solicitation of Votes</u>. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. All procedures used to distribute Ballots to the applicable Holders of Claims and to tabulate the Ballots were fair and reasonable and conducted in accordance with the Disclosure Statement Approval Order, the Solicitation Extension Order, and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

E.   Notice of Confirmation Hearing.   The Debtors have given proper and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d). Due, adequate, and sufficient notice of the Confirmation Hearing, along with the deadlines for voting on or filing objections to the Plan, has been given to all known Holders of Claims and Interests substantially in accordance with the procedures set forth in the Disclosure Statement Approval Order and the Solicitation Extension Order. The notice of the Confirmation Hearing, the Disclosure Statement, Plan and appropriate Ballots were transmitted and served in compliance with the Disclosure Statement Approval Order, the Solicitation Extension Order, and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and such transmittal and service were adequate and sufficient under the circumstances. In addition, notice of the Confirmation Hearing was published in the national edition of the Wall Street Journal, regional English and Spanish language papers in Las Vegas, Los Angeles, and Phoenix, and English language publications in Miami and Fort Lauderdale in compliance with the Disclosure Statement Approval Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and such publication notice was adequate and sufficient under the circumstances.

F.   Subsequent Plan Modifications.   Adequate and sufficient notice of the Subsequent Plan Modifications has been given and no other or further notice is or shall be required and such Subsequent Plan Modifications are approved in full.

G.   Burden of Proof.   The Debtors, as the proponents of the Plan, have the burden of proving the satisfaction of the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

5

H.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).   The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(1)    Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1)).   In addition to Administrative Expense Claims (including Claims under the DIP Facility); Professional Compensation Claims; and Priority Tax Claims, which need not be classified, the Plan designates one hundred twenty (120) Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan and such Classes are proper. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2)    Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).   The Plan specifies that the following classes (collectively, the "*Unimpaired Classes*") are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code: Other Priority Claims against BMHC (Class 1(a)), Other Priority Claims against BMC West (Class 1(b)), Other Priority Claims against SelectBuild Construction (Class 1(c)), Other Priority Claims against SelectBuild Northern California (Class 1(d)), Other Priority Claims against Illinois Framing (Class 1(e)), Other Priority Claims against C Construction (Class 1(f)), Other Priority Claims against TWF Construction (Class 1(g)), Other Priority Claims against H.N.R. Framing Systems (Class 1(h)), Other Priority Claims against SelectBuild Southern California (Class 1(i)), Other Priority Claims against SelectBuild Nevada (Class (j)); Other Priority Claims against SelectBuild Arizona (Class 1(k)), and Other Priority Claims against SelectBuild Illinois (Class 1(l)); Other Secured Claims against BMHC (Class 4(a)), Other Secured Claims against BMC West (Class 4(b)), Other Secured Claims against SelectBuild Construction (Class 4(c)), Other Secured Claims against SelectBuild Northern California (Class 4(d)), Other Secured Claims against Illinois Framing (Class 4(e)), Other Secured Claims against C Construction (Class 4(f)), Other Secured Claims against TWF Construction (Class 4(g)), Other Secured Claims against H.N.R. Framing Systems (Class 4(h)), Other Secured Claims against SelectBuild Southern California (Class 4(i)), Other Secured Claims against SelectBuild Nevada (Class 4(j)), Other Secured Claims against SelectBuild Arizona (Class 4(k)), and Other Secured Claims against SelectBuild Illinois (Class 4(l)); L/C General Unsecured Claims against BMHC (Class 5(a)), L/C General Unsecured Claims against BMC West (Class 5(b)), L/C General Unsecured Claims against SelectBuild Construction (Class 5(c)), L/C General Unsecured Claims against SelectBuild Northern California (Class 5(d)), L/C General Unsecured Claims against Illinois Framing (Class 5(e)), L/C General Unsecured Claims against C Construction (Class 5(f)), L/C General Unsecured Claims against TWF Construction (Class 5(g)), L/C General Unsecured Claims against H.N.R. Framing Systems (Class 5(h)), L/C General Unsecured Claims against SelectBuild Southern California (Class 5(i)), L/C General Unsecured Claims against SelectBuild Nevada (Class 5(j)), L/C General Unsecured Claims against SelectBuild Arizona (Class 5(k)), and L/C

General Unsecured Claims against SelectBuild Illinois (Class 5(l)); to preserve the Debtors' corporate structure, Intercompany Claims against BMHC (Class 5(a)), Intercompany Claims against BMC West (Class 5(b)), Intercompany Claims against SelectBuild Construction (Class 5(c)), Intercompany Claims against SelectBuild Northern California (Class 5(d)), Intercompany Claims against Illinois Framing (Class 5(e)), Intercompany Claims against C Construction (Class 5(f)), Intercompany Claims against TWF Construction (Class 5(g)), Intercompany Claims against H.N.R. Framing Systems (Class 5(h)), Intercompany Claims against SelectBuild Southern California (Class 5(i)), Intercompany Claims against SelectBuild Nevada (Class 5(j)), Intercompany Claims against SelectBuild Arizona (Class 5(k)), and Intercompany Claims against SelectBuild Illinois (Class 5(l)); and, to preserve the Debtors' corporate structure, Interests in BMC West (Class 9(b)), Interests in SelectBuild Construction (Class 9(c)), Interests in SelectBuild Northern California (Class 9(d)), Interests in Illinois Framing (Class 9(e)), Interests in C Construction (Class 9(f)), Interests in TWF Construction (Class 9(g)), Interests in H.N.R. Framing Systems (Class 9(h)), Interests in SelectBuild Southern California (Class 9(i)), Interests in SelectBuild Nevada (Class 9(j)), Interests in SelectBuild Arizona (Class 9(k)), and Interests in SelectBuild Illinois (Class 9(l)).

(3)     Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  The Plan designates the following classes (collectively, the "**_Impaired Classes_**") as Impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:  Funded Lender Claims against BMHC (Class 2(a)), Funded Lender Claims against BMC West (Class 2(b)), Funded Lender Claims against SelectBuild Construction (Class 2(c)), Funded Lender Claims against SelectBuild Northern California (Class 2(d)), Funded Lender Claims against Illinois Framing (Class 2(e)), Funded Lender Claims against C Construction (Class 2(f)), Funded Lender Claims against TWF Construction (Class 2(g)), Funded Lender Claims against H.N.R. Framing Systems (Class 2(h)), Funded Lender Claims against SelectBuild Southern California (Class 2(i)), Funded Lender Claims against SelectBuild Nevada (Class 2(j)), Funded Lender Claims against SelectBuild Arizona (Class 2(k)), and Funded Lender Claims against SelectBuild Illinois (Class 2(l)); L/C Lender Claims against BMHC (Class 3(a)), L/C Lender Claims against BMC West (Class 3(b)), L/C Lender Claims against SelectBuild Construction (Class 3(c)), L/C Lender Claims against SelectBuild Northern California (Class 3(d)), L/C Lender Claims against Illinois Framing (Class 3(e)), L/C Lender Claims against C Construction (Class 3(f)), L/C Lender Claims against TWF Construction (Class 3(g)), L/C Lender Claims against H.N.R. Framing Systems (Class 3(h)), L/C Lender Claims against SelectBuild Southern California (Class 3(i)), L/C Lender Claims against SelectBuild Nevada (Class 3(j)), L/C Lender Claims against SelectBuild Arizona (Class 3(k)), and L/C Lender Claims against SelectBuild Illinois (Class 3(l)); General Unsecured Claims against BMHC (Class 6(a)), General Unsecured Claims against BMC West (Class 6(b)), General Unsecured Claims against SelectBuild Construction (Class 6(c)), General Unsecured Claims against SelectBuild Northern California (Class 6(d)), General Unsecured Claims against Illinois Framing (Class 6(e)), General Unsecured Claims against C Construction (Class 6(f)), General Unsecured Claims against TWF Construction (Class 6(g)), General Unsecured Claims against H.N.R. Framing Systems (Class 6(h)), General Unsecured Claims against

7

SelectBuild Southern California (Class 6(i)), General Unsecured Claims against SelectBuild Nevada (Class 6(j)), General Unsecured Claims against SelectBuild Arizona (Class 6(k)), and General Unsecured Claims against SelectBuild Illinois (Class 6(l)); Small Unsecured Claims against BMHC (Class 8(a)), Small Unsecured Claims against BMC West (Class 8(b)), Small Unsecured Claims against SelectBuild Construction (Class 8(c)), Small Unsecured Claims against SelectBuild Northern California (Class 8(d)), Small Unsecured Claims against Illinois Framing (Class 8(e)), Small Unsecured Claims against C Construction (Class 8(f)), Small Unsecured Claims against TWF Construction (Class 8(g)), Small Unsecured Claims against H.N.R. Framing Systems (Class 8(h)), Small Unsecured Claims against SelectBuild Southern California (Class 8(i)), Small Unsecured Claims against SelectBuild Nevada (Class 8(j)), Small Unsecured Claims against SelectBuild Arizona (Class 8(k)), and Small Unsecured Claims against SelectBuild Illinois (Class 8(l)); Interests in BMHC (Class 9(a)); Section 510(b) Claims against BMHC (Class 10(a)), Section 510(b) Claims against BMC West (Class 10(b)), Section 510(b) Claims against SelectBuild Construction (Class 10(c)), Section 510(b) Claims against SelectBuild Northern California (Class 10(d)), Section 510(b) Claims against Illinois Framing (Class 10(e)), Section 510(b) Claims against C Construction (Class 10(f)), Section 510(b) Claims against TWF Construction (Class 10(g)), Section 510(b) Claims against H.N.R. Framing Systems (Class 10(h)), Section 510(b) Claims against SelectBuild Southern California (Class 10(i)), Section 510(b) Claims against SelectBuild Nevada (Class 10(j)), Section 510(b) Claims against SelectBuild Arizona (Class 10(k)), and Section 510(b) Claims against SelectBuild Illinois (Class 10(l)).

(4)     No Discrimination Within Classes (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(5)     Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(6)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan provides that the New Certificates of Incorporation and New Bylaws shall prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(7)     Selection of Directors and Officers (11 U.S.C. § 1123(a)(7)). Pursuant to Section 7.10 of the Plan, on and after the Effective Date, the business and affairs of the Reorganized Debtors will be managed by the officers, directors or managers identified in the Plan Supplement. At or prior to the Confirmation Hearing, the Debtors disclosed the identity and affiliations of any Person (each, a "*New Director*") proposed to serve on the New Boards, and, to the extent such Person is an insider other than by virtue of being a director, the nature of any compensation for such Person. On the Effective Date, the New Boards shall be established as provided in the New Certificates of Incorporation and New Bylaws of the Reorganized Debtors, and the New Directors and officers of the

8

Reorganized Debtors shall be appointed as the New Directors and officers of the Reorganized Debtors. The New Directors and officers of the Reorganized Debtors were selected in a manner consistent with the interests of creditors and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(8)     Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates and not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (i) the assumption or rejection of executory contracts and unexpired leases; (ii) the Reorganized Debtors' retention of any and all Causes of Action whether arising before or after the Petition Date, and whether directly or derivatively; and (iii) releases of various persons and entities, exculpation of various persons and entities with respect to actions related to or taken in furtherance of the Chapter 11 Cases, and preliminary and permanent injunctions against certain actions against the Debtors, their Estates, and their properties.

(9)     Identification of Plan (Bankruptcy Rule 3016(a)). The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

I.     The Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(1)     the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

(2)     the Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court; and

(3)     the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Approval Order and Solicitation Extension Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

J.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases and the formulation and confirmation of the Plan. The Debtors have

9

negotiated the Plan and participated in the Plan formulation process at arms' length and in good faith. The Chapter 11 Cases were filed and the Plan was proposed with the legitimate and honest purpose of reorganizing the Debtors and maximizing the value of the Debtors' assets and expeditiously distributing the Reorganized BMHC Equity Interests and other consideration to the Debtors' creditors and interest holders pursuant to the Plan.

K.   Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).   Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases requiring approval, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

L.   Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)).   The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims against and Interests in the Debtors and with public policy. To the extent available, the identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed.

M.   No Rate Changes (11 U.S.C. § 1129(a)(6)).   The Debtors are not subject to any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

10

N.    <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis set forth in Exhibit E to the Disclosure Statement, as updated prior to the Confirmation Hearing, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other evidence and (3) establish that each Holder of a Claim or Interest in an Impaired Class either (i) has accepted the Plan or (ii) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

O.    <u>Acceptance by Classes (11 U.S.C. § 1129(a)(8))</u>.  Under section 1126(f) of the Bankruptcy Code, the Holders of Claims in the Unimpaired Classes are Unimpaired and, thus, are conclusively presumed to have accepted the Plan. The Holders of Claims in Classes 2(a)-(l), Classes 3(a)-(l), Classes 6(a), 6(k), and 6(l) and Classes 8(a)(-(l) are impaired by the Plan and have voted to accept the Plan in accordance with sections 1126(c) of the Bankruptcy Code. The Holders of the Claims and/or Interests in Class 9(a) and Classes 10(a)-(l) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. In addition, the Holders of Claims in Classes 6(b), 6(c), 6(d), 6(f), 6(g), 6(h), 6(i), and 6(j) are impaired by the Plan and have voted to reject the Plan. No valid ballot was cast in class 6(e). Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to such rejecting Classes identified above, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such rejecting Classes (collectively, the "<u>*Rejecting Classes*</u>"). Section 5.3 of the Plan contemplates the non-consensual confirmation of the Plan.

11

P.    Treatment of Administrative Expense Claims, Other Priority Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).    The treatment of Allowed Administrative Expense Claims, Professional Compensation Claims, DIP Facility Claims and Allowed Other Priority Claims under Sections 2.1, 2.2, 2.4 and 4.1 of the Plan, respectively, satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Allowed Priority Tax Claims under Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code, thereby satisfying section 1129(a)(9) of the Bankruptcy Code.

Q.    Acceptance by At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). Classes 2(a)-(l), Classes 3(a)-(l), Classes 6(a), 6(k) and 6(l), and Classes 8(a)(-(l) are Impaired Classes of Claims that have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by "insiders," thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

R.    Feasibility (11 U.S.C. § 1129(a)(11)).    The evidence proffered or adduced at the Confirmation Hearing (1) is persuasive and credible, (2) has not been controverted by other evidence, and (3) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

S.    Payment of Fees (11 U.S.C. § 1129(a)(12)).    All fees payable under 28 U.S.C. § 1930 have been paid or will be paid pursuant to Section 2.5 of the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

12

T. **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).** The Reorganized Debtors shall continue to pay all retiree benefits of the Debtors, if any, for the duration of the period for which the Debtors have obligated themselves to provide such benefits, thereby satisfying section 1129(a)(13) of the Bankruptcy Code to the extent such section is applicable to the Debtors.

U. **No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).** The following classes are deemed to have rejected the Plan: Interests in BMHC (Class 9(a)); Section 510(b) Claims against BMHC (Class 10(a)), Section 510(b) Claims against BMC West (Class 10(b)), Section 510(b) Claims against SelectBuild Construction (Class 10(c)), Section 510(b) Claims against SelectBuild Northern California (Class 10(d)), Section 510(b) Claims against Illinois Framing (Class 10(e)), Section 510(b) Claims against C Construction (Class 10(f)), Section 510(b) Claims against TWF Construction (Class 10(g)), Section 510(b) Claims against H.N.R. Framing Systems (Class 10(h)), Section 510(b) Claims against SelectBuild Southern California (Class 10(i)), Section 510(b) Claims against SelectBuild Nevada (Class 10(j)), Section 510(b) Claims against SelectBuild Arizona (Class 10(k)), and Section 510(b) Claims against SelectBuild Illinois (Class 10(l)). In addition, the Holders of Claims in Classes 6(b), 6(c), 6(d), 6(f), 6(g), 6(h), 6(i), and 6(j) are impaired by the Plan and have voted to reject the Plan. No valid ballot was cast in class 6(e). The evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any interest that is junior to the Claims and Interests represented by the respective Rejecting Classes will receive or retain any property under the Plan on account of

13

such junior interest, and no Holder of a Claim in a Class senior to the Rejecting Classes is receiving more than 100% recovery on account of its Claim. Thus, the Plan may be confirmed notwithstanding the rejection or deemed rejection of the Plan by the Rejecting Classes.

V.    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

W.    Good Faith Solicitation (11 U.S.C. § 1125(e)). The evidence proffered or adduced at the Confirmation Hearing (1) is persuasive and credible, (2) has not been controverted by other evidence, and (3) establishes that the Debtors (and each of their respective officers, directors, employees, Professionals, and agents) (collectively, the *"Protected Parties"*) have, as applicable, (a) solicited acceptances or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation and (b) participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation in the offer and issuance of any securities under the Plan. Accordingly, each of the Protected Parties is entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation, release, and limitation of liability provisions and protections set forth in Article IX of the Plan.

X.    Satisfaction of Confirmation Requirements. Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

14

Y.  Retention of Jurisdiction. This Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan as and to the extent provided therein and as contemplated herein.

Z.  Classification Takes Into Account Subordination Rights. The classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all contractual, legal, and equitable subordination and turnover rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against another Holder of a Claim or Interest with respect to any distribution made pursuant to the Plan.

AA.  Findings Regarding Third-Party Releases and Related Provisions. The release, exculpation, and injunction provisions contained in the Plan, including, without limitation, those contained in Article IX of the Plan, (1) have been negotiated in good faith and at arms' length; (2) are consistent with sections 105, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable caselaw; and (3) are each necessary for the Debtors' successful reorganization and are integral to the structure of the Plan and formed part of the agreement among all parties in interest embodied therein.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.  Confirmation of the Plan. The Plan is approved and confirmed under section 1129 of the Bankruptcy Code. Each of the terms and conditions of the Plan, and the exhibits and schedules thereto, are an integral part of the Plan and are incorporated by reference into this Confirmation Order. The Plan complies with all applicable provisions of the

068301.1001

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules relating to and regarding confirmation.

2. <u>Objections</u>. All Objections to confirmation of the Plan that have not been withdrawn, waived, or settled and all reservations of rights included therein, are overruled on the merits and for the reasons set forth on the record at the Confirmation Hearing. All withdrawn objections are deemed withdrawn with prejudice.

3. <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

4. <u>Plan Classification Controlling</u>. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. Other than with respect to the Small Unsecured Claims Class Election, the classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, and (c) may not be relied upon by any creditor or interest holder as representing the actual classification of such Claims or Interests under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan).

5. <u>Distributions are Fair</u>. The distribution of Cash, Reorganized BMHC Equity Interests, Term Notes and the other consideration to the Holders of Allowed Claims in exchange for their Allowed Claims is fair and for reasonably equivalent value. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification,

16

distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

6.     Binding Effect.     Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, effective as of the Effective Date and without limiting or altering Section 9.6 of the Plan, the provisions of the Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with, the Plan) and this Confirmation Order shall be binding on (a) the Debtors, (b) all Holders of Claims against and Interests in the Debtors, whether or not Impaired under the Plan and whether or not such Holders have accepted or rejected the Plan, (c) each Person or entity receiving, retaining, or otherwise acquiring property under the Plan, (d) any non-Debtor party to an executory contract or unexpired lease with any one of the Debtors, (e) any Person or entity making an appearance in the Chapter 11 Cases or any other party-in-interest in the Chapter 11 Cases, and (f) each of the foregoing's respective successors and assigns.

7.     Claims Arising Under the DIP Facility.     On the Effective Date, the Allowed Claims under the DIP Facility shall be indefeasibly paid in full in Cash in full satisfaction, settlement, discharge, and release of, and in exchange for, such Claims under the DIP Facility. Upon indefeasible payment and satisfaction in full of all Allowed Claims under the DIP Facility, the DIP Facility revolving credit agreement (the *"DIP Credit Agreement"*), and all "Loan Documents" as defined therein, respectively, and all Liens and security interests granted to secure the Claims under the DIP Facility, shall be immediately terminated, extinguished, and released, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any

17

Person, and the administrative agent under the DIP Facility shall promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors. Notwithstanding the above, any indemnity provisions contained in the DIP Credit Agreement shall survive such termination, release, and satisfaction in the manner and to the extent set forth therein.

8. Corporate Existence. The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date (subject to the Restructuring Transactions) with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

9. Vesting of Assets in the Reorganized Debtors. Except as otherwise provided in the Plan or this Confirmation Order, on and after the Effective Date, all property and assets of the Debtors and their Estates (including, without limitation, Causes of Action and, unless otherwise waived pursuant to an order of this Court, the Avoidance Actions) and any property and assets acquired by the Debtors pursuant to the Plan or during the Chapter 11 Cases shall vest in the Reorganized Debtors, free and clear of any and all Liens, Claims, Interests, charges, or other encumbrances. Except as otherwise provided in the Plan or this Confirmation Order, on and after the Effective Date, the Reorganized Debtors may (a) operate their businesses, (b) use, acquire, transfer, or dispose of property, and (c) compromise or settle any Claims or Causes of Action, in each case without notice to, hearing before, supervision of, or approval by

068301.1001

this Court and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

10.     Release of Liens, Claims and Equity Interests.     Except as otherwise provided in this Confirmation Order, the Plan, or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Interests, mortgages, deeds of trust, or other security interests against the property of the Estates shall be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any entity. Any Person or entity holding such Liens or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

11.     Reorganized BMHC Equity Interests.     On the Effective Date, the Reorganized Debtors shall issue Reorganized BMHC Equity Interests pursuant to the terms set forth herein and in the Plan. Except as set forth herein, the aggregate number of shares of the Reorganized BMHC Equity Interests to be issued on the Effective Date (after giving effect to the Restructuring Transactions) shall be 65,297,935.75 shares (the "*Aggregate Effective Date Equity Issuance*"). The Aggregate Effective Date Equity Issuance shall be subject to (a) dilution by (i) future issuance to Holders of Allowed Claims in Class 3 in accordance with the Plan, and (ii) future issuances in respect of the Long Term Incentive Plan and (b) to adjustment in the

19

reasonable discretion of the Reorganized Debtors to effectuate the terms of the Plan. To preserve the Debtors' corporate structure for the benefit of the Holders of Allowed Funded Lender Claims and Allowed L/C Lender Claims, Intercompany Interests in each of BMC West, SelectBuild Construction, SelectBuild Northern California, Illinois Framing, C Construction, TWF Construction, H.N.R. Framing Systems, SelectBuild Southern California, SelectBuild Nevada, SelectBuild Arizona and SelectBuild Illinois are reinstated.

12. Restructuring Transactions. The Debtors are authorized to consummate the Restructuring Transactions described in Section 7.6 of the Plan, subject to the terms and conditions set forth therein and in this Confirmation Order.

13. Distributions Exempt from Securities Laws. On the Effective Date, the Reorganized Debtors are authorized to and shall issue, as applicable, the Reorganized BMHC Equity Interests and any and all other securities, notes, stock, instruments, certificates, and other documents or agreements required to be issued, executed, or delivered pursuant to the Plan (collectively, the *"New Securities and Documents"*), in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or entity. The issuance of the New Securities and Documents, and the offering, issuance, and distribution thereof under the Plan, shall be exempt from, among other things, registration under applicable securities laws and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities pursuant to section 1145(a) of the Bankruptcy Code. Without limiting the effect of section 1145 of the Bankruptcy Code, all documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, shall become effective and binding in accordance with their respective terms and conditions upon the parties

20

thereto, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or entity (other than as expressly required by such applicable agreement). In addition, any securities contemplated by the Plan will be tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code and (b) the restrictions, if any, on the transferability of such securities and instruments.

14. Exit Financing. On the Effective Date, the Reorganized Debtors shall be authorized to enter into the Exit Credit Facilities consisting of the Exit Revolver and the Exit Term Loan (on substantially the terms set forth in forms filed in the Plan Supplement, as amended or supplemented), as well as execute, deliver, file, record, and issue any notes, intercreditor agreements, documents (including, but not limited to, UCC financing statements, security agreements, mortgages, deeds of trusts or other collateral documents), instruments, or agreements necessary or appropriate to give effect to the transactions contemplated thereby (collectively, the "*New Credit Agreement Documents*"), and perform their obligations under the New Credit Agreement Documents, including but not limited to payment of all fees referenced in that certain Fee Letter dated as of December 14, 2009 with Wells Fargo Foothill, LLC and that certain Fee Letter dated as of December 14, 2009 with DK Acquisition Partners, L.P., in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any entity (other than as expressly required by any applicable New Credit Agreement Document). The Liens and security interests to be granted by the Reorganized Debtors pursuant to the terms of the New Credit Agreement Documents shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Credit Agreement

21

Documents. All persons who are parties to the New Credit Agreement shall be deemed to be parties to and bound by the Intercreditor Agreement. The New Credit Agreements are subject to certain conditions precedent which must be satisfied on or prior to the Effective Date, including but not limited to: (i) the withdrawal or disallowance of the Internal Revenue Service's Claims filed in the Chapter 11 Cases with respect to the Form 1139 Carryback Refunds that were received in 2009; (ii) the Debtors providing the Exit Term Loan Lenders satisfactory evidence that the prepetition tax liabilities, including any accrued interest and penalties related thereto, determined by the Internal Revenue Service to be due with respect to 2005 and 2006 being paid in full and extinguished; and (iii) the Debtors having provided evidence that (a) C Construction, Inc. has sold its "Davis Brothers" facilities, and (b) Illinois Framing, Inc. and SelectBuild Illinois, LLC have abandoned their facilities.

15.     The Term Loan Credit Agreement. On the Effective Date, the Reorganized Debtors shall be authorized to enter into the Term Loan Credit Agreement (on substantially the terms set forth in the forms filed in the Plan Supplement, as amended or supplemented), including but not limited to the execution, delivery, filing, recordation, issuance or affirmance of any notes, security agreements, other collateral documents, documents, instruments or agreements necessary or appropriate to give effect to the transactions contemplated thereby (including UCC financing statements) and consummate the transactions contemplated thereby and such Term Loan Credit Agreement shall become binding, and enforceable in accordance with its terms and conditions without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any entity. The Liens and security interests to be granted by the Reorganized Debtors pursuant to the terms of the Term Loan Credit Agreement shall be deemed perfected on the Effective Date,

22

subject only to such Liens and security interests as may be permitted under the Term Loan Credit Agreement. All persons receiving Term Notes pursuant to the Plan are, by their acceptance of such Term Notes, deemed to be parties to and bound by the Term Loan Credit Agreement and all documents related thereto, including but not limited to the Intercreditor Agreement.

16.     New Shareholder Agreement.    On the Effective Date, the Reorganized Debtors shall be authorized to enter into and consummate the transactions contemplated by a Shareholder Agreement and such document, and any agreement or document entered into in connection therewith, shall become valid, binding, and enforceable in accordance with its terms and conditions, without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any entity. All persons receiving Reorganized BMHC Equity Interests pursuant to the Plan, by their acceptance of such Reorganized BMHC Equity Interests, are deemed to be parties to and bound by the Shareholder Agreement and all documents related thereto.

17.     Discharge of the Debtors.    Except as otherwise expressly provided in the Plan or this Confirmation Order, the Confirmation of the Plan shall, as of the Effective Date: (i) discharge the Debtors, the Reorganized Debtors or any of its or their Assets from all Claims, demands, liabilities, other debts and Interests that arose on or before the Effective Date, including all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code or (c) the Holder of a Claim based on such debt has accepted the Plan; and (ii) preclude all Persons from asserting against the Debtors, the Reorganized Debtors, or any of its or their Assets, any other or further Claims or Interests based upon any act

23

or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any judgment obtained against any of the Debtors at any time, to the extent that such judgment relates to a discharged Claim or cancelled Interest.

18. <u>Releases, Exculpation and Limitation of Liability</u>. The releases, exculpation, and limitation of liability provisions contained in the Plan, including, but not limited to, those provided in Article IX of the Plan, are fair and equitable and given for valuable consideration and are in the best interests of the Debtors and all parties-in-interest, and, accordingly, are hereby authorized, approved, and binding on all Persons and entities described therein.

19. <u>Injunctions</u>. The injunctions contained in the Plan, including, but not limited to, those provided in Article IX of the Plan, are hereby authorized, approved, and binding on all Persons and entities described therein. Except as otherwise provided in the Plan or his Confirmation Order, all entities that have held, currently hold, or may hold Claims or other debts or liabilities against the Debtors, or an Interest or other right of an Equity Security Holder in any or all of the Debtors, that are discharged pursuant to the terms of the Plan, are permanently enjoined, on and after the Effective Date, from taking any of the following actions on account of any such Claims, debts, liabilities or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt, liability, Interest, or right, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or any of its or their Assets on account of any such Claim, debt, liability, Interest, or right; (iii) creating, perfecting, or enforcing any Lien

24

or encumbrance against the Debtors, the Reorganized Debtors, or any of its or their Assets on account of any such Claim, debt, liability, Interest or right; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, the Reorganized Debtors, or any of its or their Assets on account of any such Claim, debt, liability, Interest, or right; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Such injunction shall extend to any successor of the Debtors, the Reorganized Debtors, or any of its or their Assets. Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

20. Assumed Contracts and Leases.

(a) Generally. Except as otherwise provided for in the Plan or this Confirmation Order, all Executory Contracts and Unexpired Leases of the Debtors are hereby assumed pursuant to section 365 of the Bankruptcy Code as of the Effective Date (collectively, the "*Assumed Contracts*"), except for any such contract or lease (i) that has been assumed or rejected, or renegotiated and either assumed or rejected on renegotiated terms, pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) that has been entered into by the Debtors during the pendency of the Chapter 11 Cases in the ordinary course of business or pursuant to an order of the Bankruptcy Court, (iii) that is the subject of a motion to reject, or a motion to approve renegotiated terms and to assume or reject on such renegotiated terms, that has been filed and served prior to the Effective Date, or (iv) that is identified on the Rejected Executory Contract and Unexpired Lease List; provided, however, that the applicable Debtors

25

shall assume the Collective Bargaining Agreements on the Effective Date. The Debtors' assumption of the Assumed Contracts is hereby approved. Each Executory Contract and Unexpired Lease assumed pursuant to this Confirmation Order or any other order of the Court which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

(b)     Cure Disputes. Any monetary defaults under each Executory Contract and Unexpired Lease assumed pursuant to this Confirmation Order shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (i) the Cure Claim, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the payments required by section 365(b)(1) of the Bankruptcy Code in respect of Cure Claims shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Any counterparty to an Executory Contract or Unexpired Lease that has failed or fails to object timely to the proposed assumption or Cure Claim specified in notices of proposed assumption and proposed Cure Claims served pursuant to Disclosure Statement Approval Order shall be deemed to have assented to such assumption and Cure Claim. If an objection to a proposed Cure Claim is sustained by the

26

Bankruptcy Court, the Reorganized Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

21. **Approval of Rejected Contracts.** All agreements that are rejected pursuant to the Rejected Executory Contract and Unexpired Lease List shall be rejected effective as of the date specified therein. All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or this Confirmation Order, including with respect to rejected vacation and/or paid time off programs or agreements under section 6.2 of the Plan and all Executory Contracts or Unexpired Leases identified on the Rejected Executory Contract and Unexpired Lease List, must be filed with the Bankruptcy Court and served on GCG as specified in the notice attached hereto as Exhibit 3 within 30 days of the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed and served as specified within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Section 4.6 or 4.8 of the Plan, whichever may be applicable.

22. **Effectuating Documents; Further Transactions.** On and after the Effective Date, Reorganized BMHC and the other Reorganized Debtors, and the officers and members of the New Boards, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and

27

conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of Reorganized BMHC and the other Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

23. <u>Corporate Action</u>. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (i) the adoption or assumption, as applicable, of the agreements with existing management; (ii) the selection of the directors and officers for the Reorganized Debtors; (iii) the distribution of the Reorganized BMHC Equity Interests in accordance with the Plan; (iv) the execution and entry into the Exit Revolver, the Exit Term Loan and the Term Loan Credit Agreement; (v) the establishment of the Long Term Incentive Plan and the issuance of any Reorganized BMHC Equity Interests thereunder; and (vi) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the Revolving Credit Agreement, the Exit Term Loan and the Term Loan Credit Agreement, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated herein shall be effective

**28**

notwithstanding any requirements under non-bankruptcy law. The issuance of the Reorganized BMHC Equity Interests shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of securities by an officer or director (or a director deputized for purposes thereof) as of the new Effective Date.

24.    <u>Exemption From Transfer Taxes</u>.    Pursuant to section 1146 of the Bankruptcy Code, any issuance, transfer or exchange of any security, or the execution, delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under the Plan, and shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

25.    <u>Professional Compensation Claims</u>.

(a)    <u>Professional Compensation Claims Bar Date</u>.  Notwithstanding any other provision of the Plan dealing with Administrative Expense Claims, any Person asserting a Professional Compensation Claim shall, no later than thirty (30) days after the Confirmation Date (the "<u>Professional Compensation Claims Bar Date</u>"), file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date. To the extent that such an award is granted by the Bankruptcy Court, the requesting Person shall receive: (i) payment of Cash in an amount equal to the amount Allowed

29

by the Bankruptcy Court less all interim compensation paid to such Professional during the Chapter 11 Cases, such payment to be made within the later of (1) the Effective Date or (2) three (3) business days after the Order granting such Person's final fee application becomes a Final Order; (ii) payment on such other terms as may be mutually agreed upon by the Holder of the Professional Compensation Claim and BMHC or Reorganized BMHC, as applicable (but in no event shall the payment exceed the amount Allowed by the Bankruptcy Court); or (iii) payment in accordance with the terms of any applicable administrative procedures orders entered by the Bankruptcy Court, including the Interim Compensation Order, dated July 14, 2009.

(b)     Service of Final Fee Applications.     All final fee applications of Professionals shall be filed with this Court and actually served on or prior to the Professional Compensation Claims Bar Date upon the following parties: (i) Building Materials Holding Corporation, 720 Park Boulevard, Suite 200, Boise, Idaho 83712, Attn.: Paul S. Street; (ii) Gibson, Dunn & Crutcher LLP, 200 Park Ave., New York, New York 10166, Attn.: Michael A. Rosenthal and Matthew K. Kelsey; (iii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Sean M. Beach and Robert F. Poppiti, Jr.; (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Joseph McMahon; (v) Arent Fox, LLP, 1050 Connecticut Avenue, NW, Washington, DC 20036-5339, Attn: Christopher J. Giaimo and Katie A. Lane; (v) Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801, Attn: Bradford J. Sandler; (vii) Paul, Hastings, Janofsky & Walker LLP, 55 Second Street, Twenty-Fourth Floor, San Francisco, California 94105, Attn: Kevin B. Fisher; and (viii) Paul, Hastings,

30

Janofsky & Walker LLP, 75 E. 55th Street, First Floor, New York, NY 10022, Attn: Thomas L. Kent (collectively, the "*Notice Parties*").

(c) Objections to and Hearing to Approve Final Fee Applications. Any objection to any final fee application shall be filed with this Court, together with proof of service thereof, and served upon the applicable Professional and the other Notice Parties, so as to be actually received not later than 4:00 p.m. (prevailing Eastern Time) on the date that is twenty (20) days after such final fee application is filed with this Court and served upon the Notice Parties (the "*Professional Fees Objection Deadline*"). Only those objections made in writing and timely filed and received by the Professional Fees Objection Deadline will be considered by this Court. If no objection to a final fee application is timely filed and served in accordance with the procedures set forth herein, then this Court may enter a final order approving such uncontested final fee application without further notice and the Reorganized Debtors may pay the amounts described in such uncontested final fee application (or if any final fee application is the subject of an objection, the Reorganized Debtors may pay the undisputed amounts described in such final fee application). The hearing to consider approval of the final fee applications, if necessary, will be held as soon as reasonably practicable after the expiration of the Professional Fees Objection Deadline and the date of such hearing will be promptly provided to the applicable Professional and Notice Parties and posted on the Debtors' restructuring website.

26. Resolution of Disputed Claims. If the Debtors or any other party in interest disputes any Claim against the Debtors, such dispute shall be determined, resolved, or adjudicated, as the case may be, under applicable law by the Bankruptcy Court. Among other things, (a) the Debtors (on or before the Effective Date), and (b) the Reorganized Debtors (after the Effective Date) may each elect, at their respective sole option, to object to or seek estimation

31

under section 502 of the Bankruptcy Code with respect to any Proof of Claim filed by or on behalf of a Holder of a Claim against the Debtors.

27. No Distributions Pending Allowance. Notwithstanding any other provision of the Plan or this Confirmation Order to the contrary, if a Claim or any portion of a Claim is disputed, no payment or Distribution will be made on account of the disputed portion of such Claim (or the entire Claim, if the entire Claim is disputed), unless such Disputed Claim or portion thereof becomes an Allowed Claim.

28. No Postpetition Interest on Claims. Unless otherwise specifically provided for in the Plan, this Confirmation Order, or other Final Order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim.

29. Reserve for Disputed General Unsecured Claims. On the Effective Date, the Disbursing Agent shall establish, and maintain thereafter, a reserve from the Unsecured Cash Fund for the benefit of Holders of Disputed General Unsecured Claims. Such reserve shall consist of an amount of Cash equal to the amount that would be distributable to all Holders of such Disputed General Unsecured Claims, in respect of all distributions made to that date, if those Claims were Allowed in the Maximum Amount. In the event any such Disputed General Unsecured Claim becomes an Allowed Claim, the amount of such Allowed Claim shall never exceed the Maximum Amount of such Disputed General Unsecured Claim, and the Disbursing Agent shall distribute to the Holder of such Allowed Claim from the reserve the aggregate amount of Cash that such Holder would have received as of the date of such distribution in respect of such Allowed Claim had such Claim been an Allowed Claim as of the Effective Date.

32

If a Disputed General Unsecured Claim is disallowed, the Cash reserved for such claim shall be distributed, on the next anniversary of the Effective Date (or as soon as practicable thereafter), to Holders of Allowed Claims in the applicable class.

30.    Payment of Statutory Fees. All outstanding fees payable pursuant to section 1930 of title 28, United States Code shall be paid on, or as soon as reasonably practicable after, the Effective Date. All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as practicable.

31.    Dissolution of the Committee. The Committee shall be dissolved on the Effective Date and shall not continue to exist thereafter except for the limited purposes of filing any remaining fee applications, and the Professionals retained by the Committee shall be entitled to compensation for services performed and reimbursement of expenses incurred in connection therewith. Upon dissolution of the Committee, the members of the Committee shall be released and discharged of and from all duties, responsibilities and obligations related to and arising from and in connection with the Debtors' Chapter 11 Cases.

32.    Termination of Interests. On the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, the Interests in BMHC shall be terminated, cancelled, and extinguished.

33.    Notice of Confirmed Plan, Effective Date and Deadline for Filing Certain Claims. In accordance with Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve the Notice of Confirmed Plan, Effective Date and Deadline for Filing Certain Claims, substantially in the form attached hereto as Exhibit 3, by first-class mail, postage prepaid on all known creditors, equity security holders, and other parties in interest in the Chapter 11 Cases; provided, however, that such notice

33

need not be given or served under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person or entity to whom the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person or entity of that Person's or entity's new mailing address. The notice described herein is adequate and appropriate under the particular circumstances and no other or further notice is necessary or required.

34. No Liability for Protected Parties. Based on the factual findings described in this Confirmation Order, the Protected Parties are not, and on account of or with respect to the offer or issuance of any security under the Plan, and/or solicitation of votes on the Plan, will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan. The Protected Parties have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws, and regulations and are, therefore, entitled to, and are hereby granted, the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation, release, and limitation of liability provisions set forth in Article IX of the Plan.

35. Substantial Consummation. "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

36. Estimation Proceedings and Other Rights. Any and all rights of the Debtors and Reorganized Debtors under Section 502(c) and Section 502(e) of the Bankruptcy Code are reserved.

34

37. <u>Reversal or Modification of Confirmation Order</u>. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court of competent jurisdiction, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the date that the Debtors received actual written notice of the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the date that the Debtors received actual written notice of the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan, or any amendments or modifications thereto, in effect prior to the date that the Debtors received such actual written notice.

38. <u>Failure to Consummate Plan</u>. In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

39. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising under, arising in, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction over the matters set forth in Article

35

XI of the Plan. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Confirmation Order. Notwithstanding anything contained in this Order to the contrary, any dispute arising under or in connection with the Exit Credit Facilities and/or the Term Loan Credit Agreement shall be dealt with in accordance with the provisions of the applicable document; provided, however, that the Bankruptcy Court shall retain exclusive jurisdiction over any dispute regarding the parties' compliance with their respective obligations under that certain Financing Commitment letter dated as of December 14, 2009 between Building Materials Holding Corporation and Wells Fargo Foothill, LLC and that certain Financing Commitment Letter dated as of December 14, 2009 between Building Materials Holding Corporation and DK Acquisition Partners, L.P.

40.     Headings. The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

41.     Securities and Exchange Commission. Notwithstanding anything that may be construed to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall act as a release of any claims or causes of action of the Securities and Exchange Commission against any non-Debtors.

42.     California Franchise Tax Board. Notwithstanding anything that may be construed to the contrary in the Plan or this Confirmation Order, (i) the setoff and recoupment rights of the California Franchise Tax Board, if any, are preserved and may be exercised to the extent authorized by §§ 362(b)(26), 363(e) or 553 of the Bankruptcy Code or order of this Court; and (ii) pursuant to § 106(a)(3) of the Bankruptcy Code, punitive damages may not be awarded against the California Franchise Tax Board by this Court.

43.     Texas Ad Valorem Tax Claimants/Local Texas Tax Authorities.
Notwithstanding anything that may be construed to the contrary in the Plan or this Confirmation
Order, solely with respect to the claims of the objecting Texas Ad Valorem Tax Claimants [See
D.I. 983] and the Local Texas Tax Authorities [See D.I. 986], the Texas Ad Valorem Tax
Claimants and the Local Texas Tax Authorities, to the extent they hold Allowed claims, (i) shall
retain any property tax liens they may hold, at the priority they now hold, until all taxes,
penalties and interest protected by those liens have been paid; and (ii) to the extent they are
oversecured pursuant to section 506(b), are entitled to interest from the Petition Date through the
Effective Date, as well as from the Effective Date until paid in full, both at the statutory rate of
1% per month pursuant to section 511 of the Bankruptcy Code and Texas Property Tax Code
§ 33.01(c).

44.     Robert R. Thomas and The Restated Thomas Trust.     Notwithstanding
anything that may be construed to the contrary in the Plan or this Confirmation Order, the Cure
Claims, if any, of Robert R. Thomas or The Restated Thomas Trust Dated April 14, 2009 under
the Acquisition Agreement (as defined in the Objection By Robert R. Thomas and The Restated
Thomas Trust Dated April 14, 2009 to Confirmation of Joint Plan of Reorganization as Amended
October 22, 2009 [D.I. 1008]) shall be resolved by proceedings consistent with the Alternative
Dispute Resolution provisions of the Acquisition Agreement.

45.     Juan M. Navarro and Letitia Ramirez.     Notwithstanding anything that may
be construed to the contrary in the Plan or this Confirmation Order, no personal injury claim(s)
of Juan M. Navarro and/or Letitia Ramirez shall be (i) liquidated or estimated by the Bankruptcy
Court for purposes of distribution under the Plan, or (ii) tried in the Bankruptcy Court.

46.     Liberty Mutual Insurance Company.   That certain General Agreement of Indemnity dated April 15, 2004, and that certain General Agreement of Indemnity—Commercial Surety dated December 21, 2004, by and between certain Debtors and Liberty Mutual Insurance Company, are Assumed Contracts under the Plan.

47.     Westchester Fire Insurance Company.   The Debtors have resolved the informal objection of Westchester Fire Insurance Company ("*Westchester Fire*") as follows: Westchester Fire and the reorganized parent/holding company, BMHC, shall enter into, effective as of the Effective Date, a new indemnity agreement in favor of Westchester Fire, substantially in the form of the indemnity agreement entered into by Westchester Fire and BMHC ~~The Reorganized Debtors will execute an agreement of indemnity~~ on October 2, 2007, which agreement will indemnify Westchester Fire and affiliated entities for any claims that may arise under surety bonds executed for the Debtors or Reorganized Debtors by Westchester Fire, whether executed prior or subsequent to the Petition Date, or following the Effective Date of the Plan. The Debtors and the Reorganized Debtors acknowledge that: Westchester Fire currently holds a letter of credit issued by Wells Fargo Bank, N.A., No. NZS621797 in the amount of $12,500,000, which letter of credit shall continue to secure all indemnification or other obligations arising either prepetition, postpetition or postconfirmation in connection with Westchester Fire's surety bonds.

48.     Allowed Priority Tax Claims.   Payments made with respect to Allowed Priority Tax Claims under section 2.3 of the Plan shall be paid in equal monthly installments; provided, however, that nothing in the Plan or this Confirmation Order shall prevent the Reorganized Debtors, in their discretion, from paying any Allowed Priority Tax Claims in full at any time, on or after the Effective Date.

DB02:9046181.1                                    068301.1001

49.  Department of Justice.  Nothing in this Order or the Plan discharges, releases, precludes, or enjoins:  (i) any environmental liability to any governmental unit that is not a Claim; (ii) any environmental Claim of any governmental unit arising on or after the Effective Date; (iii) any environmental liability to any governmental unit that any entity would be subject to as the owner or operator of property arising or springing anew on or after the Effective Date; or (iv) any liability to the United States on the part of any Person other than the Debtors or Reorganized Debtors.

50.  Voting Stipulations.  The stipulations with respect to voting on the Plan that were presented at the Confirmation Hearing are approved in all respects.

51.  References to Plan Provisions.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan (and the exhibits and schedules thereto) be confirmed in its entirety and incorporated herein by reference.

52.  Confirmation Order Controlling.  If there is any conflict or inconsistency between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control and govern.

53.  Immediate Effectiveness of this Confirmation Order.  Pursuant to Bankruptcy Rule 3020(e), the ten day stay of this Confirmation Order imposed thereby is waived and the Debtors are hereby authorized to consummate the Plan and the transactions contemplated

thereby immediately upon the entry of this Confirmation Order upon the docket and upon the satisfaction or waiver of the conditions set forth in Section 10.1.2 of the Plan.

Dated: December 17, 2009
      Wilmington, Delaware

Kevin J. Carey
United States Bankruptcy Judge

